# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE; ALL-OPTIONS, INC.; and JEFFREY GLAZER, M.D. | ) ) ) | CASE NO. 1:18-cv-1904-SBE-MJD |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) ) | CLASS ACTION |
| v. | ) ) | |
| CURTIS T. HILL, JR., Attorney General of the State of Indiana, in his official capacity; KRISTINA BOX, M.D., Commissioner of the Indiana State Department of Health, in her official capacity; JOHN STROBEL, M.D., President of the Medical Licensing Board of Indiana, in his official capacity; and KENNETH P. COTTER, St. Joseph County Prosecutor, in his official capacity and as representative of a class of all Indiana prosecuting attorneys with authority to prosecute felony and misdemeanor offenses, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>DECLARATION OF AMY HAGSTROM MILLER</u>

Amy Hagstrom Miller hereby declares under penalty of perjury that the following statements are true and correct:

1. I am the President and Chief Executive Officer ("CEO") of Whole Woman's Health Alliance ("WWHA"), a nonprofit organization.  WWHA is a plaintiff in this case.

2. In addition, I am the President and CEO of Whole Woman's Health ("WWH"), a consortium of limited liability companies.

1

**WWHA**

3.     WWHA is a nonprofit organization incorporated under Texas law.  Its mission is to provide abortion care in underserved communities and shift the stigma around abortion in our culture.

4.     WWHA's Certificate of Formation and Bylaws vest management of the affairs of the organization in its Board of Directors.

5.     The Board of Directors currently has nine members, many of whom have expertise in providing abortion care.

6.     I serve as President of the Board of Directors.  I have thirty years of experience in abortion clinic operations and management.  I founded WWH in 2003 and have served as its President and CEO since that time.  Prior to founding WWH, I gained valuable experience working at abortion clinics in Minnesota, New York, and Texas.

7.     Beverly Whipple serves as Vice President and Treasurer of the Board of Directors. She founded Feminist Women's Health Center, a nonprofit organization that operates abortion clinics throughout Washington State, and served as its Executive Director for 35 years.  She has also served on the Board of Directors of the National Abortion Federation ("NAF"), the largest professional association of abortion providers in North America, and California Feminist Women's Health Centers, which operates a network of abortion clinics in northern California.

8.     Daniel Grossman, M.D., a member of the Board of Directors, is a Board-certified obstetrician-gynecologist ("ob-gyn") and Fellow of the American College of Obstetricians and Gynecologists ("ACOG").  He serves as Director of Advancing New Standards in Reproductive Health ("ANSIRH"), a leading research institute focused on reproductive health standards at the

2

University of California, San Francisco, and he provides abortion care at San Francisco General Hospital.

9.      Carrie Ann Terrell, M.D., a member of the Board of Directors, is a Board-certified ob-gyn who serves as Director of Obstetrics, Gynecology, Midwifery & Family Planning at the University of Minnesota Medical School.  She also provides abortion care at Whole Woman's Health of the Twin Cities, LLC.

10.     WWHA's Board of Directors also includes attorneys and communications professionals.

11.     WWHA currently operates two abortion clinics.

12.     WWHA's first clinic is located in Austin, Texas.  It opened in 2017 and is licensed by the Texas Department of State Health Services in accordance with Texas law.

13.     WWHA's second clinic is located in Charlottesville, Virginia.  It likewise opened in 2017 and is licensed by the Virginia Department of Health in accordance with Virginia law.

14.     Both of WWHA's abortion clinics are members of NAF and adhere to NAF's Clinical Policy Guidelines.  NAF's Guidelines are evidence-based clinical standards developed to promote the provision of quality, patient-centered care.

15.     Both of WWHA's abortion clinics have excellent safety records and provide high-quality care to patients.

## WWH

16.     WWH is a consortium of limited liability companies, each incorporated under Texas law.  The consortium includes a holding company, a property management company, a healthcare management company specializing in the management of abortion clinics, and a network of abortion clinics.

3

17.     WWH currently owns and operates five abortion clinics in four states:  Illinois, Maryland, Minnesota, and Texas.

18.     WWH's Texas clinics are licensed in accordance with Texas law.  WWH's Maryland clinic is licensed in accordance with Maryland law.  WWH's other clinics are not subject to State-licensure requirements.

19.     All of WWH's abortion clinics are members of NAF and adhere to NAF's Clinical Policy Guidelines.

20.     All of WWH's abortion clinics have excellent safety records and provide high-quality care to patients.

21.     WWH has served as a plaintiff in numerous federal court challenges to restrictive abortion laws that unduly burden patients' access to care.  In so doing, WWH has voluntarily exposed its clinics to broad civil discovery and judicial scrutiny.  I am proud of the care that WWH provides, and the company has nothing to hide.

22.     WWH served as lead plaintiff in a lawsuit that went all the way to the Supreme Court in 2016.  That lawsuit, which successfully challenged a pair of medically unnecessary abortion restrictions, was captioned *Whole Woman's Health v. Hellerstedt*.

23.     The Supreme Court case brought tremendous publicity to WWH and shined a spotlight on its clinics.  The lawsuit was covered by dozens of national media outlets, including the *New York Times*, the *Washington Post*, *USA Today*, National Public Radio, CNN, NBC News, *Rolling Stone*, and *Cosmopolitan*.  Many of these outlets interviewed me and visited WWH's clinics.

**Relationship Between WWHA and WWH**

24.     WWHA and WWH are legally and financially independent organizations that conduct business at arm's length.

25.     WWHA has a robust conflict-of-interest policy.  In accordance with that policy, I disclosed my relationship with WWH to WWHA's Board of Directors, and I have recused myself from all Board decisions concerning whether to conduct business with WWH.

26.     WWHA has retained WWH's healthcare management company to provide management services to WWHA's clinics in Austin and Charlottesville.  Those services include bookkeeping; human resources; regulatory compliance; public relations; and marketing.

27.     WWHA has also retained WWH's healthcare management company to provide management services at an abortion clinic in South Bend, Indiana (the "South Bend Clinic").  The Indiana State Department of Health (the "Department") has so far prevented that clinic from opening by refusing to grant it a license to provide abortions.

28.     Healthcare management companies are common in the healthcare field.  Many healthcare providers, whose expertise is in providing medical care, hire management companies to provide back-office services.

29.     All contracts between WWHA and WWH are approved by WWHA's uninterested Directors (*i.e.*, those Directors who have no financial interest in WWH).

**WWHA's Plans to Open an Abortion Clinic in South Bend**

30.     WWHA would like to provide abortion care in South Bend.

31.     The Board of Directors became interested in opening an abortion clinic in South Bend following outreach by a group of local community members.

32.     Based on that outreach and our own independent research, we determined that South Bend is an underserved community.  There is substantial demand for abortion care in the region, but no local providers.  Currently, people throughout north-central and northeastern Indiana have to travel long distances to reach an abortion provider.  Further, there is a large population of college students in the South Bend area.  Many of these students do not have cars and have little discretionary income, making it especially difficult for them to travel long distances to access healthcare.

33.     WWHA invested more than a year in finding a facility to house the South Bend Clinic; retrofitting it to make it a welcoming environment for patients; purchasing equipment; and hiring staff.

34.     We selected Dr. Jeffrey Glazer to be the Medical Director of the South Bend Clinic. Dr. Glazer is an experienced abortion provider who shares WWHA's commitment to patient-centered care.  He has been providing abortion care at other Indiana clinics for more than five years.

35.     Our initial choice for Clinic Administrator was a member of the local community with prior abortion clinic experience.[1]  Our interviews with her and the feedback that we received from several professional and personal references convinced us that she was qualified for the position and committed to providing high-quality patient care.  We were aware that the Indiana Medical Licensing Board had taken disciplinary action against a doctor at the clinic where she previously worked, but after conducting due diligence, we were satisfied that she had not been involved in any wrongdoing.  Unfortunately, following the denial of our license application, which

---

[1] I am reluctant to identify her by name because I do not want to subject her to additional publicity.  After we submitted our application for an abortion clinic license, which contained her name, the Department released the application to the public.  Subsequently, she was targeted for harassment by anti-abortion activists in the South Bend community, and local reporters showed up at her house, uninvited, aggressively seeking to interview her.

prevented us from opening the South Bend Clinic, we could no longer afford to pay the Clinic Administrator's salary and had to let her go.  It is my understanding that she has since accepted employment at another reproductive healthcare organization in Indiana.  WWHA has identified another person who is qualified and willing to serve as Clinic Administrator once we are able to open the South Bend Clinic.

36.     Although WWHA would like to provide the full spectrum of abortion care at the South Bend Clinic, under existing law, it is not feasible for us to offer surgical abortion care.  For the time being, we plan to offer medication abortion only.  We filed the instant lawsuit to challenge the laws that prevent us from providing the full spectrum of abortion care or otherwise impose undue burdens on people seeking abortion in Indiana.   As it turns out, the Department's discretionary application of Indiana's abortion clinic licensing laws has, to date, prevented us from providing even medication abortion at the South Bend Clinic.

<u>**License Denial and Administrative Appeal**</u>

37.     WWHA applied for a license to operate an abortion clinic as required by Indiana law.  We submitted our initial application on August 11, 2017, and a revised application on October 6, 2017.

38.     WWHA notified the Department that the South Bend Clinic would only offer medication abortion to its patients and sought a waiver of licensure requirements geared toward surgical abortion, such as physical plant requirements.  We had learned through a public records request that the Department granted an identical set of waivers to another abortion clinic that offered medication abortion only.

39.     On October 27, 2017, the Department contacted us through our attorney to request additional information.  We responded on December 8, 2017, providing complete and truthful answers to all of the Department's questions.

40.     On January 3, 2018, the Department denied WWHA's license application.

41.     WWHA appealed the denial on January 22, 2018.

42.     After a lengthy discovery period, in which both WWHA and WWH provided information and documents to the Department, the administrative law judge assigned to our appeal held a hearing on August 22-23, 2018.  I testified at that hearing and was present for the testimony of the other witnesses as well as for the Department's opening and closing statements.

43.     The Department's representative, Mr. Fox, testified that WWHA's original choice of Clinic Administrator had concerned him because of her connection to the doctor who had been disciplined.  But he acknowledged that he was not sure what her role was at the clinic where the doctor had worked, and the Department had taken no steps to investigate it.  Moreover, the Department never requested additional information from WWHA about the prospective Clinic Administrator or sought to interview her.

44.     Mr. Fox also testified that the Governor and Department received unsolicited letters from State Senators Joseph Zakas (who was voted out of office last year), Erin Houchin, and Ryan Mishler opposing WWHA's license application.  The letters alleged that WWH has a history of serious health violations.  All three senators have a reputation in the community for being staunchly opposed to abortion rights, and they are closely allied with Indiana Right to Life, which likely provided the talking points on which their letters were based.  Prior to the denial of our license application, the Department never shared the senators' letters with WWHA or provided us with an opportunity to respond to them.  The allegations in the letters are completely and utterly false.

45.     Additionally, Mr. Fox testified that WWHA provided incomplete information in response to the Department's request that we describe our ownership structure because we did not identify WWH as an "affiliate" or list the abortion clinics owned and operated by WWH.  But WWHA and WWH are not affiliated in any way that pertains to WWHA's ownership structure. They are legally and financially independent organizations.  Their only relationship is contractual. In response to the Department's request, WWHA disclosed that it had retained WWH's healthcare management company to provide management services for the South Bend Clinic, and we even provided the Department with a copy of the fully-executed management services agreement.

46.     Throughout the hearing, the Department insinuated that WWHA sought to hide its relationship with WWH because of concerns about WWH's reputation.  This is absolutely false. WWH enjoys an excellent reputation as a provider of high-quality abortion care.  Moreover, WWH has a high public profile, as I mentioned above.  The company stands in the light and has nothing to hide.

47.     Had the Department asked WWHA to identify any abortion clinics in which I have a financial interest or leadership role, then WWHA would have identified all of the abortion clinics owned and operated by WWH.  But the Department did not ask WWHA for this information, and none of the questions that the Department did ask gave us notice that this was the information it really wanted.

48.     In any event, through the discovery process in the administrative appeal and the cross-examinations it conducted at the administrative hearing, the Department gathered extensive information about the clinics operated by WWHA as well as the clinics operated by WWH.

49.     In addition to serving interrogatories and document requests on WWHA, the Department also served WWH's healthcare management company and each of its clinics with

extensive requests for nonparty production of documents.  Although the accompanying subpoenas were invalid and unenforceable, WWH voluntarily produced documents to the Department.

50.     Still, the Department refuses to grant WWHA a license to provide medication abortions at the South Bend Clinic, claiming that it has insufficient information on which to base a licensure determination.

51.     On January 16, 2019, WWHA submitted a second application for licensure of the South Bend Clinic.  We included in our submission copies of all inspection reports and plans of correction concerning our Austin and Charlottesville clinics.  We also provided the names and addresses of all clinics owned and operated by WWH.

52.     On February 25, 2019, the Department notified WWHA through its attorney that it would not evaluate this application unless, among other things, WWHA responds to unreasonably broad demands for documents concerning the licensure and inspection of WWH's abortion clinics. For example, one of the document demands states: "Provide copies of all forms, correspondence, reports, and other documents that *concern, mention, or relate to* any application(s) by the affiliate for licensure of or other permission to operate an abortion clinic at any time since and including January 1, 2014." (emphasis added).  The Department's February 25, 2019, correspondence is attached hereto as Exhibit A.

53.     WWHA submitted a response to the Department on March 15, 2019, the deadline set by the Department, but it was not able to produce the voluminous set of documents that the Department had demanded.  WWHA's March 15, 2019, submission is attached hereto as Exhibit B, excluding Att.3, comprised of confidential ownership ledgers.

54.     It would require dozens of hours and extensive attorney involvement to respond to the Department's document demands.  Further, the effort would divert resources away from patient care at both WWHA and WWH.

55.     These document demands appear designed to harass and intimidate WWHA and WWH.  They are certainly not designed to ascertain whether WWHA can safely provide medication abortion at the South Bend Clinic.

56.     Except for the South Bend Clinic, no WWHA or WWH clinic has ever been denied an abortion clinic license.

57.     On November 29, 2006, the Texas Department of State Health Services (the "Texas Department") issued an Emergency Order revoking the license of a WWH clinic in Beaumont, Texas, based on erroneous inspection findings.  After WWH notified the Texas Department of the errors, it immediately lifted the revocation order, without a formal hearing or consent decree.  That happened on December 7, 2006, eight days after the revocation order had been issued.  WWHA included the "Emergency Order" and the "Order Lifting Emergency Order for Revocation" in our March 15, 2019, submission to the Department. They are part of Exhibit B attached hereto.

58.     Apart from that incident, no WWHA or WWH clinic has ever had a state license suspended or revoked.

### Indiana's Admitting Privileges Requirement

59.     I am aware that, as a condition of licensure, Indiana law requires WWHA to provide proof that our physicians either have admitting privileges at a local hospital or have a written agreement with a backup physician who has admitting privileges at a local hospital.

60.     I am familiar with the process for obtaining hospital admitting privileges based on my work with WWH in Texas.  Texas enacted an admitting privileges requirement for abortion providers in 2013.  WWH worked closely with all of the physicians providing abortion care at its

Texas clinics to seek the required admitting privileges.  Many physicians were unable to obtain them for reasons wholly unrelated to their clinical competence.  Ultimately, the Supreme Court struck down the Texas law as an undue burden on abortion access.

61.     Currently, the only physician that WWHA has engaged to provide abortion care at the South Bend Clinic is Dr. Glazer.  It would be difficult, if not impossible, for Dr. Glazer to obtain admitting privileges at a hospital in the South Bend region, even though he is a Board-certified ob-gyn and has had admitting privileges at several hospitals over the course of his career. Hospitals typically require admitting-privileges applicants to reside near the hospital, but Dr. Glazer does not reside in northern Indiana.  In addition, hospitals typically require admitting-privileges applicants to commit to admitting a minimum number of patients to the hospital annually.  But the only medical care that Dr. Glazer would provide in the region is medication abortion, and medication abortion patients hardly ever require hospital admission.

62.     Further, hospitals typically require admitting-privileges applicants to identify a backup physician willing to cover the applicant's shifts at the hospital when the applicant is not available.  Often, the backup physician must co-sign the admitting privileges application.  But under Indiana law, if Dr. Glazer entered into a written agreement with a backup doctor who has admitting privileges at a local hospital, then Dr. Glazer would not need to obtain such privileges himself.

63.     For these reasons, WWHA focused its efforts on finding a backup physician with admitting privileges at a local hospital willing to enter into a written agreement with Dr. Glazer.

64.     We began the search for a backup physician in April 2017.  It took us until December 2017 to find a physician who was willing and able to enter into a written backup

12

agreement with Dr. Glazer.  During this time, we reached out to numerous physicians—and some of those physicians, in turn, reached out to other physicians in their professional networks.

65.     Nearly all the physicians to whom we reached out were supportive of WWHA's plans to open an abortion clinic in South Bend, but they declined to serve as our backup doctor for various reasons.  Some told us that they did not have admitting privileges and were not willing to seek them because the scope of their current practices did not require them.  Some told us that their practice groups prohibited them from associating with an abortion provider.  Many expressed concerns that entering into a written agreement with WWHA would subject them or their family members to discrimination and retaliation because abortion opponents in the South Bend area are vocal, well-funded, and politically well-connected.  Some also expressed fear of violence or harassment against themselves or their family members because anti-abortion activists are known to resort to such tactics.

66.     Eventually, one physician who was on staff at a hospital in South Bend but did not have admitting privileges there agreed to seek admitting privileges so that she could serve as WWHA's backup physician.  This physician was extremely concerned about the potential repercussions of being publicly associated with an abortion provider, so I will refer to her as Dr. Poe, a pseudonym, rather than by her real name.

67.     Dr. Poe applied for and ultimately obtained admitting privileges through the hospitalist group at the hospital where she is on staff.  It is WWHA's understanding that Dr. Poe had to complete a credentialing process in order to obtain privileges from the hospitalist group, and that her name appears on a roster of physicians maintained in the hospital's emergency room signifying that her patients should be admitted to the hospital when admission is medically appropriate.  Dr. Poe's relationship with the hospitalist group ensures that any patient for whom

she is responsible will be admitted to the hospital in appropriate circumstances and then transferred to the care of a hospitalist physician.

68.    When WWHA applied for a license to provide medication abortion at the South Bend Clinic, we notified the Department that Dr. Poe entered into a written backup agreement with Dr. Glazer, and we provided all of the documentation that the Department requested concerning Dr. Poe.  The Department never raised any concerns about the nature of Dr. Poe's admitting privileges.

69.    When WWHA's attorneys started work on this preliminary injunction motion, WWHA became aware that there are a range of possible interpretations of Indiana's admitting privileges requirement.  We also became aware that, if the Department interprets the law as requiring a backup physician to have admitting privileges *from* a hospital rather than simply *at* a hospital, Dr. Poe's admitting privileges might not suffice, even though Dr. Poe could ensure that any WWHA patient requiring hospitalization would be admitted to the hospital where she is on staff.  Upon learning this, we immediately contacted the Department, through our attorneys, to confirm that Dr. Poe's admitting privileges satisfy the requirements of Indiana law as the Department interprets those requirements.

70.    We made our inquiry to the Department via email on March 18, 2019.  To date, we have not received any response from the Department.

71.    Should the Department tell us that Dr. Poe's admitting privileges do not satisfy the requirements of Indiana law, WWHA will seek another backup physician.  Based on our prior experience, I am concerned that it could take months to find another backup physician, and it is possible that we may not be able to find one at all.

72.     WWHA seeks to avoid any further delay in opening the South Bend Clinic.  In our view, the South Bend Clinic should not be prevented from providing medication abortion to northern Indiana residents while we seek a new backup physician because those residents are in urgent need of a local abortion provider and Indiana's admitting privileges requirement is not necessary to ensure patient health and safety.  Medication abortion patients very rarely experience complications that require hospital admission.  Further, a patient requiring hospitalization will be admitted and treated regardless of whether the patient's abortion provider has admitting privileges at the hospital or has an agreement with a backup doctor who does.  In addition, WWHA's agreement with Dr. Poe provides added assurance that a patient seeking treatment at Dr. Poe's hospital will be admitted there.

## WWHA's Request for Preliminary Injunctive Relief

73.     It has been nearly a year and a half since WWHA submitted a revised license application to the Department.  But for the Department's refusal to grant WWHA an abortion clinic license, WWHA would have begun providing medication abortions at the South Bend Clinic in October 2017.

74.     The Department's course of conduct during that time period has made clear that it has no intention of ever granting WWHA an abortion clinic license.

75.     As a result, the South Bend Clinic remains closed, and people throughout north-central and northeastern Indiana must travel unnecessarily long distances to access abortion care.

76.     Because the South Bend Clinic is currently unable to provide abortion care, it is not earning any revenue from patient services.  Nevertheless, it continues to incur expenses for rent, utilities, property maintenance, and building security.

77.     I am not sure how long WWHA can continue to maintain the South Bend Clinic without patient revenue.  Our other clinics generate little, if any, net revenue.  Our only other source of income is charitable contributions, and they are variable and hard to forecast.  I am concerned that, as time goes on, no one will want to donate money to support a clinic that is not actually providing services.

78.     WWHA will do everything in its power to maintain possession of the South Bend Clinic, but it is unlikely that we will be able to continue without patient revenue until after the trial in this case, which I understand is scheduled to begin in August of 2020.  That is nearly three years from the time that we submitted our revised license application.

79.     WWHA is seeking a preliminary injunction so that we can provide medication abortions at the South Bend Clinic while this lawsuit proceeds.  Should the Court grant our motion, we would be able to start seeing patients within two to three weeks.

80.     I know that WWHA could safely provide medication abortions at an unlicensed clinic in South Bend because WWH has been safely providing medication abortions at unlicensed clinics in Illinois and Minnesota for years.

Dated: March 26, 2019

*Amy Hagstrom Miller*
AMY HAGSTROM MILLER

# EXHIBIT A



**Eric J. Holcomb**
*Governor*

**Kristina Box, MD, FACOG**
*State Health Commissioner*

**Indiana State Department of Health**
*An Equal Opportunity Employer*

February 25, 2019

**Via Regular Mail & Email (rsharma@lawyeringproject.org)**

Ms. Rupali Sharma, Senior Counsel & Director
Lawyering Project
99 Silver Street 4-10
Portland, Maine 04101

Dear Ms. Sharma:

The Indiana State Department of Health ("ISDH") has reviewed the "Application for License to Operate Abortion Clinic" and accompanying documentation submitted by Whole Woman's Health Alliance ("WWHA") on about January 19, 2019. As detailed below, we have noticed some deficiencies and are requesting additional information concerning the application. In current form, the application and accompanying documents do not meet the requirements of 410 IAC 26, and are insufficient to permit a determination that WWHA meets the requirements of IC 16-21-2-11. Please correct the deficiencies and provide the requested information by close of business on **March 15, 2019**.

### Deficiencies and Required Corrections

1.  The application form used is not the current ISDH form and does not comply with IC 16-21-2-2.5(c). **Please resubmit the application using the current form, a copy of which is attached.**

2.  In item 3 of Section D of the license application form ("Services provided under this license"), WWHA lists "APC 1" as "other" staff. **Please identify and explain what "APC 1" means.**

3.  The December 18, 2018 "Emergency Services Agreement" ("ESA #1") between Dr. Jeffrey Glazer and Dr. ███████ does not identify the hospital where Dr. ███████ has privileges. **Please provide a revised ESA #1 that properly identifies the hospital (including location) where Dr. ███████ has privileges.**

4.  The July 25, 2017 "Emergency Services Agreement" ("ESA #2) is missing all identifying information (which appears to have been redacted) and is out of date because Indiana law requires that such agreements be updated annually. **Please provide a revised version of ESA #2 that clearly names the parties, identifies the hospital where the referral-accepting doctor has privileges, and is current (i.e., less than one year old).**

5.  In Conclusion of Law No. 17 of its December 2018 final order affirming ISDH's denial of WWHA's August 2017 application to license an abortion clinic in South Bend (the "Order"), the ISDH Appeals Panel held that:



**Indiana**
A State that **Works**

2 North Meridian Street • Indianapolis, IN 46204
317.233.1325
www.statehealth.in.gov

To promote, protect, and improve the health and safety of all Hoosiers.



**Indiana State
Department of Health**
An Equal Opportunity Employer

Rupali Sharma
Page 2 of 2

Whole Woman's Health, LLC; Whole Woman's Health of McAllen, LLC; Whole
Woman's Health of Fort Worth, LLC; Whole Woman's Health of Baltimore, LLC;
Whole Woman's Health of the Twin Cities, LLC; Whole Woman's Health of San
Antonio, LLC; and Whole Woman's Health of Peoria, LLC <u>are affiliates of Whole
Woman's Health Alliance</u> because those entities are under the common control of
Amy Hagstrom Miller *[emphasis added]*.

WWHA did not appeal the Order or Conclusion of Law No. 17 and is therefore bound by
it. Accordingly, for each affiliate of WWHA identified in the Order:

a. Provide copies of all reports, complaints, forms, correspondence, and other
documents that concern, mention, or relate to any investigation, inspection, or
survey of the affiliate by any state or other regulatory authorities at any time since
and including January 1, 2014.

b. Provide copies of all forms, correspondence, reports, and other documents that
concern, mention, or relate to any application(s) by the affiliate for licensure of or
other permission to operate an abortion clinic at any time since and including
January 1, 2014.

c. Provide copies of all orders, submissions, correspondence and other documents
that concern, mention, or relate to any regulatory or administrative enforcement
action, or administrative, civil or criminal court action involving the affiliate at
any time since and including January 1, 2014.

d. Provide the legal name and current address of each person who, at any time since
and including January 1, 2014, has been an organizer, manager, director, owner,
and/or officer of the affiliate.

We look forward to receiving WWHA's correct and complete application on or before March
15, 2019. Please let us know if you have questions in the meantime.

Very truly yours,

Randall Snyder
Director, Division of Acute Care

MWF/gb

# EXHIBIT B



99 Silver Street, 4-10
Portland, ME 04101

Rupali Sharma
Direct Line: 908.930.6645
rsharma@lawyeringproject.org

March 15, 2019

Kristina Box, MD, FACOG
State Health Commissioner
Indiana State Department of Health
2 North Meridian Street
Indianapolis, Indiana 46204

Dear Dr. Box:

I am in receipt of the Department's letter dated February 25, 2019.  On behalf of Whole Woman's Health Alliance ("WWHA"), please find below and attached a response to the Department's letter. Hard copies will follow by U.S. mail.

Please do not hesitate to contact me if you have any questions.

**Request #1:**   The application form used is not the current ISDH form and does not comply with IC 16-21-2-2.5(c). **Please resubmit the application using the current form, a copy of which is attached.**

**Response #1:**

WWHA submitted its application on January 16, 2019, using the form that the Department made available on its website at the time. Nonetheless, WWHA has copied the information it provided on the Department's previous form into the Department's new form. Att. 1.

**Request #2:**   In item 3 of Section D of the license application form ("Services provided under this license"), WWHA lists "APC l" as "other" staff. **Please identify and explain what "APC I" means.**

**Response #2:**

Question D.3 on the Department's form asks WWHA to identify the "title and number" of individuals working in its prospective clinic. WWHA wrote "APC 1" to indicate that it will have one advanced practice clinician, or "APC," working at its clinic.

**Request #3:**   The December 18, 2018 "Emergency Services Agreement" ("ESA #1") between Dr. Jeffrey Glazer and Dr. ██████████ does not identify the hospital where Dr. ██████ has privileges. **Please provide a revised ESA #1 that properly identifies the hospital (including location) where Dr. ██████ has privileges.**

**Response #3:**

1

Indiana Code § 16-34-2-4.5(2) does not require that the agreement identify the name or location of the hospital. Nonetheless, WWHA discloses that ███████████████████ is located in South Bend.

**Request #4:**   The July 25, 2017 "Emergency Services Agreement" ("ESA #2") is missing all identifying information (which appears to have been redacted) and is out of date because Indiana law requires that such agreements be updated annually. **Please provide a revised version of ESA #-2 that clearly names the parties, identifies the hospital where the referral-accepting doctor has privileges, and is current (i.e., less than one year old).**

**Response #4:**

The July 25, 2017 agreement is no longer operative. The operative agreement is dated December 18, 2018. WWHA has previously provided the Department a copy of that agreement in support of its Application for a License to Operate an Abortion Clinic, submitted on January 16, 2019.

**Request #5:**   In Conclusion of Law No. 17 of its December 2018 final order affirming ISDH's denial of WWHA's August 2017 application to license an abortion clinic in South Bend (the "Order"), the ISDH Appeals Panel held that:

> Whole Woman's Health, LLC; Whole Woman's Health of McAllen, LLC; Whole Woman's Health of Fort Worth, LLC; Whole Woman's Health of Baltimore, LLC; Whole Woman's Health of the Twin Cities, LLC; Whole Woman's Health of San Antonio, LLC; and Whole Woman's Health of Peoria, LLC <u>are affiliates of Whole Woman's Health Alliance</u> because those entities  are under the common control of Amy Hagstrom Miller *[emphasis added).*

WWHA did not appeal the Order or Conclusion of Law No. 17 and is therefore bound by it. Accordingly, for each affiliate of W WWHA identified in the Order: [provide the information and documents described in (a)-(d)].

**Response #5:**

The December 2018 Order upholds the denial of WWHA's previous application. That Order does not govern WWHA's current application. In any event, the Department is not entitled to the extensive information it now demands.

Information about independent limited liability company clinics owned by Amy Hagstrom Miller ("Whole Woman's Health clinics") will shed no light on whether WWHA meets the requirements of Ind. Code § 16-21-2-11. Further, Ind. Code § 16-21-2-11 does not require an abortion clinic license applicant to provide any of the information, much less documentation, Request #5 demands. Although not required by law, WWHA previously identified each of the Whole Woman's Health clinics in documents supporting its application. WWHA further disclosed that

- none of the independent clinics Ms. Hagstrom Miller owns has ever closed as direct result of patient health and safety concerns, *see* Ind. Code § 16-21-2-11(d)(1);

2

- no Board member or clinic staff member has ever been convicted of a felony, *see* Ind. Code § 16-21-2-11(d)(2);
- no Board member or clinic staff member was ever employed by a facility owned or operated by the applicant that closed as result of administrative action, *see* Ind. Code § 16-21-2-11(d)(3).

Even if the independent clinics owned by Ms. Hagstrom Miller were affiliates of WWHA, which they are not, none has ever closed as a direct result of patient health and safety concerns. Thus, there are no related "administrative and legal document[s]," Ind. Code § 16-21-2-11(d)(4), to provide.

**Request #5(a)-(c):**

a.  Provide copies of all reports, complaints, forms, correspondence, and other documents that concern, mention, or relate to any investigation, inspection, or survey of the affiliate by any state or other regulatory authorities at any time since and including January 1, 2014.

b.  Provide copies of all forms, correspondence, reports, and other documents that concern, mention, or relate to any application(s) by the affiliate for licensure of or other permission to operate an abortion clinic at any time since and including January 1, 2014.

c.  Provide copies of all orders, submissions, correspondence and other documents that concern, mention, or relate to any regulatory or administrative enforcement action, or administrative, civil or criminal court action involving the affiliate at any time since and including January 1, 2014.

**Response #5(a)-(c):**

The Department's demands concerning Whole Woman's Health clinics are not only irrelevant to determining whether WWHA satisfies the requirements for licensure, but exceptionally broad and burdensome. For example, providing "all orders, submissions, correspondence, and other documents that concern, mention, or relate" to every case that Whole Woman's Health has filed challenging restrictive abortion laws, as demanded by Request #5(c), would require the production not only of privileged communications, but hundreds of thousands of pages. Further, Whole Woman's Health clinics operate in five different states; they are regulated by multiple state and federal agencies. Att. 2. Identifying every document that "*concerns, mentions, or relates to*" inspections or surveys of those entities over a five year-period, as demanded by Request #5(b) would take weeks of document review. Similarly, all "copies of all forms, correspondence, reports, and other documents that *concern, mention, or relate to* any application(s) by the affiliate for licensure of or other permission to operate an abortion clinic at any time since and including January 1, 2014" would take dozens of hours to identify, much less produce. Importantly, no WWHA or WWH clinic has ever denied an abortion clinic license, except for the South Bend Clinic. *Id.* Currently, there are Whole Woman's Health clinics in three states that require licensure. *Id.* Each of those clinics holds a license. *Id.*

**Request #5(d):**      Provide the legal name and current address of each who, at any time since and including January 1, 2014, has been organizer, manager, director, owner, and/or officer of the affiliate.

3

**Response #5(d):**

       The Whole Woman's Health clinics referenced in this request, which are not affiliates of WWHA, voluntarily provided the Department not only the information requested by Request #5(d) but supporting documentation, as well. Nonetheless, WWHA attaches those documents hereto. *See* Att. 3.

Sincerely,

*/S/Rupali Sharma*

Rupali Sharma
Senior Counsel & Director

cc:    Sharon Lau
        Amy Hagstrom Miller
        Katherine D. Jack
        Dipti Singh
        Stephanie Toti



**APPLICATION FOR LICENSE
TO OPERATE AN ABORTION CLINIC**
State Form 52233 (R6 / 1-19)
Indiana State Department of Health-Division of Acute Care
*(Pursuant to IC 16-21-2 and 410 IAC 26)*

| <u>Division of Acute Care Use Only</u> |
| --- |
| Date Received *(mm/dd/yyyy)*_____   Date Approved *(mm/dd/yyyy)*_____   Date Rejected *(mm/dd/yyyy)*_____ |

*Please Type or Print Legibly.*

| SECTION I - TYPE OF APPLICATION |
| --- |

**Application** *(Check appropriate item.)*

☑ New Facility   ☐ Renewal   ☐ **Change of Ownership** *(Anticipated date of Sale/Purchase/Lease (mm/dd/yyyy))* _____
*Submit a dated and signed copy of the bill of sale, lease or other document of transfer.*

| SECTION II - IDENTIFYING INFORMATION |
| --- |

**A. Abortion Clinic Location**

Name of Abortion Clinic
Whole Woman's Health Alliance

| Street Address *(number and street)* | P.O. Box |
| --- | --- |
| 3511 Lincoln Way West | |

| City | County | ZIP Code +4 |
| --- | --- | --- |
| South Bend | St. Joseph | 46628-1411 |

| Telephone Number | Fax Number | |
| --- | --- | --- |
| ( ) | ( ) | Abortion Clinic e-mail address:_____ |
| | | Internet Web Address: https://www.wholewomanshealthalliance.org _____ |

**B.  Mailing Address** *(if different from abortion clinic location)*

| Street Address *(number and street)* | P.O. Box |
| --- | --- |
| | |

| City | County | ZIP Code +4 |
| --- | --- | --- |
| | | |

**C.  Licensee / Ownership Information**

Licensee:  The applicant entity as registered with the secretary of state
Whole Woman's Health Alliance

| Street  Address *(number and street)* | P.O. Box |
| --- | --- |
| 1812 Centre Creek Drive, Suite 205 | |

| City | State | ZIP Code+4 |
| --- | --- | --- |
| Austin | Texas | 78754 |

| Telephone Number | Fax Number | EIN Number | Fiscal Year End Date *(mm/dd)* |
| --- | --- | --- | --- |
| ( 512 ) 835-6858 | ( 512 ) 835-6568 | 46-5318393 | 12/31 |

**D.  Services provided under this license:**

*Code items 1 and 2 as follows:    1. Provided directly by employee(s).   2. Provided by a contract service, 3. Both 1 and 2.*

1. Ancillary Services:    ☐ Laboratory: CLIA Certificate Number _____    ☐ Radiology    ☐1 Counseling

☐1 Family Planning    ☐ Pharmacy    ☐ Other *(List):* _____

2. Abortion Services:    ☒ Drug Induced Only    ☐ Surgical Only    ☐ Both Drug Induced and Surgical

*For item 3, indicate the total number of individuals (employees plus contractors) working in this clinic. This includes hourly, part-time, and full-time persons.*

3. Staffing :   Physicians: ☐1   Registered Nurses: ☐   Licensed Practical Nurses: ☐   Licensed Social Workers: ☐

Other *(List title and number, do not use acronyms):* Advanced Practice Clinician (APC) 1

---

**E. Number of Procedure Rooms Utilizing:**

Minimal Sedation ☐0        Moderate Sedation ☐0

---

**F. Type of Entity:**

| For Profit | Non-Profit | Government |
|---|---|---|
| ☐ Individual | ☐ Church Related | ☐ State |
| ☐ Partnership | ☐ Individual | ☐ County |
| ☐ Corporation | ☐ Partnership | ☐ City |
| ☐ Limited Liability Company | ☑ Corporation | ☐ City/County |
| ☐ Sole Proprietorship | ☐ Limited Liability Company | ☐ Hospital District |
| ☐ Other *(specify)* _____ | ☐ Other *(specify)* _____ | ☐ Federal |
| | | ☐ Other *(specify)* _____ |

**G. Officers** *(if the business entity is incorporated)*

| Position | Name | Address/City/State/ZIP |
|---|---|---|
| President / Chairperson / CEO | Amy Hagstrom Miller | 1812 Centre Creek Drive, Suite 205, Austin Texas, 78754 |
| Vice-President / Vice-Chairperson / COO | Beverly Whipple | 1812 Centre Creek Drive, Suite 205, Austin Texas, 78754 |
| Treasurer / CFO | Beverly Whipple | 1812 Centre Creek Drive, Suite 205, Austin Texas, 78754 |
| Secretary | John H. Bucy, II | 1812 Centre Creek Drive, Suite 205, Austin Texas, 78754 |

**H. Ownership and/or Change in Ownership:**

List names and addresses of individuals or organizations having direct or indirect ownership or controlling interest of five percent (5%) in the applicant entity. Indirect ownership interest is an entity that has an ownership interest in the applicant entity. Ownership in any entity higher in a pyramid than the applicant constitutes indirect ownership. *(Use additional sheet if necessary.)*

| Name | Business Address/City/State/ZIP | EIN Number |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**I. Declarations:**

Has any applicant, or an owner or affiliate of the applicant, operated an abortion clinic that was closed as a direct result of patient health and safety concerns?  ☐ YES  ☑ NO

Has any principal or clinic staff member been convicted of a felony?  ☐ YES  ☑ NO

Has any principal or clinic staff member ever been employed by a facility owned or operated by the applicant that closed as a result of administrative or legal action?  ☐ YES  ☑ NO

*For any YES responses: attach copies of administrative and legal documentation, inspection reports, violations and remediation contracts.*

**CERTIFICATION OF APPLICATION**

The undersigned hereby makes application for a license to operate an Abortion Clinic (Clinic) in the State of Indiana, and in support of this application, represents and shows that the owner(s) and operator(s) are of reputable and reasonable character, are able to comply with the Abortion Clinic statues, IC 16-21-2-2.5 and IC 16-34, and the rules promulgated there under, 410 IAC 26 and will operate and maintain this clinic in accordance with those rules.

I certify that the operational policies of the clinic will not provide for discrimination based upon race, color, creed, or national origin.

I swear and affirm under the penalty of perjury that all statements made in this application and any attachments thereto are correct and complete and that I will comply with all regulations, laws, and rules governing the licensing of clinics in Indiana.

| | |
|---|---|
| Signature of the Medical Director: | *[signature]* Jeffrey D. Glazer M.D. |
| Printed Name and Title: | Jeffrey D. Glazer, M.D. |
| Date of Signature *(mm/dd/yyyy)*: | March 15, 2019 |
| Signature of the Clinic Administrator: | *[signature]* |
| Printed Name and Title: | Sharon Lau, Midwest Advocacy Director, Whole Woman's Health Alliance |
| Date of Signature *(mm/dd/yyyy)*: | March 15, 2019 |

*See the following page for instructions regarding licensure fees and submission of this application.*

3

**License Fee**

**Select the appropriate fee based upon the total number of first trimester procedures as reported to the Indiana State Department of Health (ISDH) on the Terminated Pregnancy Report (State Form 36526).**

| Check One | Total First Trimester Procedures in the Clinic | Fee |
|---|---|---|
| ✔ | Zero to 799 | $500.00 |
| | 800 to 3,499 | $1,000.00 |
| | 3,500 to 6,999 | $2,000.00 |
| | 7,000 and above | $3,000.00 |

*410 IAC 15-5-3*

*Enclose the following:*

*1. A completed Application for License to Operate an Abortion Clinic (this form).*

*2. Any supporting attachments.*

*3. For each physician performing procedures, either:*

    *(A) A copy (in writing) of the physician's admitting privileges; or*
    *(B) A copy of:*
        *(1) his/her written agreement with another physician with admitting privileges; and*
        *(2) a copy (in writing) of that physician's admitting privileges.*

*4. Payment made payable to "Indiana State Department of Health."*

*Mail to:*

**INDIANA STATE DEPARTMENT OF HEALTH
ATTENTION: CASHIER'S OFFICE, 2-C
2 NORTH MERIDIAN STREET
INDIANAPOLIS, INDIANA 46204**

## <u>DECLARATION OF AMY HAGSTROM MILLER</u>

Amy Hagstrom Miller hereby declares under penalty of perjury that the following statements are true and correct:

1.      I am the President and Chief Executive Officer ("CEO") of Whole Woman's Health Alliance ("WWHA"), a nonprofit organization.

2.      In addition, I am the President and CEO of Whole Woman's Health ("WWH"), a consortium of limited liability companies.

3.      WWH currently operates clinics in Illinois, Maryland, Minnesota, and Texas. Maryland and Texas require these clinics to apply for and obtain a license to lawfully provide abortion care. WWH's Maryland and Texas clinics are currently licensed in accordance with the laws of those states.

4.       On November 29, 2006, the Texas Department of State Health Services (the "Texas Department") issued an Emergency Order revoking the license of a WWH clinic in Beaumont, Texas, based on erroneous inspection findings.  WWH notified the Texas Department that its findings were erroneous, and it immediately lifted the revocation order, eight days after the revocation order had been issued. The Emergency Order and the Order Lifting Emergency Order for Revocation are attached hereto collectively as Exhibit 1.

5.      Apart from that incident, no WWHA or WWH clinic has ever had a state license suspended.

6.      No WWH clinic has ever been denied an abortion clinic license.

Dated: March 15, 2019

/S/Amy Hagstrom Miller
AMY HAGSTROM MILLER

1

DOCKET NO. A9520-519-2007

| | | |
|---|---|---|
| IN THE MATTER OF | § | BEFORE THE |
| | § | |
| WHOLE WOMENS HEALTH LP D/B/A | § | DEPARTMENT OF |
| WHOLE WOMANS HEALTH OF | § | STATE HEALTH SERVICES |
| BEAUMONT | § | |
| | § | |
| BEAUMONT, TEXAS | § | AUSTIN, TEXAS |

## EMERGENCY ORDER

### I.

The Texas Department of State Health Services (Department) has jurisdiction to regulate abortion facilities under Chapter 245 of the Texas Health and Safety Code (the Act). Section 245.012(c) of the Act allows the Department to issue an emergency order to revoke an abortion facility's license when the Department has reasonable cause to believe that the health and safety of persons are threatened.

### II.

Whole Womans Health LP d/b/a Whole Womans Health of Beaumont (Facility), located at 3470 Fannin Street, Suite 3, Beaumont, Texas 77701 is licensed by the Department as an abortion facility, license #008137, and is subject to the aforementioned Act and the Rules located at 25 Texas Administrative Code (TAC) Section 139.

### III.

On November 28, 2006, the Department conducted an on-site inspection of Whole Womans Health of Beaumont. The inspection revealed the following serious violations:

A. Facility Staff: The Facility failed to have an Administrator, in violation of 25 TAC § 139.46(2) and 139.47(a), (b) and (c); failed to have a medical consultant in violation of 25 TAC § 139.46(1); and failed to have licensed nursing staff, including a licensed registered nurse and/or licensed vocational nurse, in violation of 25 TAC § 139.46(3)(B).

B. Facility Policies and Procedures: The Facility failed to develop, implement, enforce and monitor policies and procedures which addressed laboratory procedures, complaint processing, infection control measures, medical record keeping and contract requirements, in violation of 25 TAC §§ 139.41(a)(1)(I), 139.41(a)(2)(A), (B), (F) and (G) and 139.41(a)(4).

C. Infection Control: The Facility failed to ensure that all staff complied with universal precautions, in violation of 25 TAC § 139.49(b)(1), when protective gear was not used when washing instruments. The Facility failed to ensure that staff separated contaminated supplies and equipment from clean or sterilized equipment, in violation of 25 TAC 139.49(d)(5)(B). The Facility failed to ensure that all items were thoroughly cleaned and sterilized when the Facility's autoclave was not being correctly used by staff in accordance with manufacturer's guidelines, in violation of 25 TAC § 139.49(d)(5).

D. Dispensing of Narcotics: The Facility was dispensing narcotics without holding a Class D Pharmacy license, in violation of 25 TAC § 139.60(g).

1

**IV.**

A facsimile copy of this Emergency Order has been faxed and hand-delivered by a Department representative, with copies sent by Certified Mail and First Class Mail on the date signed.

**V.**

Pursuant to the Texas Health and Safety Code § 245.012, this emergency revocation is effective immediately, on notice to the license holder. The Department shall conduct a hearing within 14 days to determine if the revocation is to be continued, modified, or rescinded. The hearing and any appeal are governed by the Department's rules for a contested case hearing and Chapter 2001 Government Code. A notice of hearing shall be issued stating the time and place of the hearing. Failure to appear at the time and place designated for the hearing will result in the factual allegations contained in this Emergency Order being deemed true, and the Department's action taken in this Emergency Order will be final.

**VI.**

Based on the findings of the on-site inspection as described in Section III., herein, the undersigned Associate Commissioner of Health finds that a situation has been identified that poses immediate jeopardy to the health and safety of persons who use this facility and that the health and safety of persons are threatened. The Associate Commissioner of Health further finds that the issuance of this Emergency Order is in the best interest of the public health and safety.

**NOW THEREFORE, IT IS ORDERED, that:**

**Abortion Facility License #008137, issued to Whole Womens Health LP d/b/a Whole Womans Health of Beaumont, is immediately revoked.**

Done at Austin, Travis County, Texas on this ___ day of _____, 2006.

_____
Kathryn C. Perkins, RN, MBA
Assistant Commissioner
Division for Regulatory Services

2

DOCKET NO. A9520-519-2007

| | | |
|---|---|---|
| IN THE MATTER OF | § | BEFORE THE TEXAS |
| | § | |
| WHOLE WOMENS HEALTH | § | DEPARTMENT OF STATE |
| LP D/B/A WHOLE WOMENS | § | HEALTH SERVICES |
| HEALTH OF BEAUMONT | § | |
| | § | |
| BEAUMONT, TEXAS | § | AUSTIN, TEXAS |

## ORDER LIFTING EMERGENCY ORDER FOR REVOCATION

The undersigned designee of the Commissioner of the Department of State Health Services, having reviewed and considered the information submitted in this matter, and having found that an Order lifting the Emergency Order for Revocation of the abortion facility license, number 008137, of Whole Womens Health LP d/b/a Whole Womens Health of Beaumont is warranted and authorized under the Texas Health and Safety Code § 245.012, finds that the license revocation imposed on that license by the Emergency Order signed by the Commissioner's designee on November 29, 2006, and effective November 29, 2006, should be lifted, effective as of the signature date on this Order.

Findings of Fact and Conclusions of Law are attached hereto and made a part hereof for all purposes.

**NOW, THEREFORE, IT IS SO ORDERED,** that:

The Emergency Order for revocation of the abortion facility license, license number 008137, of Whole Womens Health LP d/b/a Whole Womens Health of Beaumont, is lifted, effective as of the signature date on this Order.

Signed, issued, and effective on this 7th day of December, 2006.

_Kathryn C. Perkins_

Kathryn C. Perkins, RN, MBA
Assistant Commissioner
Division for Regulatory Services

## IN THE MATTER OF WHOLE WOMENS HEALTH LP D/B/A WHOLE WOMENS HEALTH OF BEAUMONT

## FINDINGS OF FACT

### Finding of Fact No. 1

The Department revoked the abortion facility license of Whole Womens Health d/b/a Whole Womens Health of Beaumont, license number 008137, pursuant to Texas Health and Safety (HSC) Chapter 245.012(c), for violations of 25 Texas Administrative Code (TAC) §§ 139.46(2), 139.47(a), (b) and (c), 139.46(1), 139.46(3)(B), 139.41(a)(1)(I), 139.41(a)(2)(A), (B), (F) and (G), 139.41(a)(4), 139.49(1), 139.49(d)(5)(B), 139.49(d)(5) and 139.60(g), relating to staffing, policies and procedures, infection control and dispensing of narcotics. The Emergency Order for Revocation was signed by the designee of the Commissioner for the Department on November 29, 2006, and was effective November 29, 2006.

### Finding of Fact No. 2

On or about December 5, 2006, Department representatives met with representatives of Whole Womens Health of Beaumont, and their legal counsel, and determined that the threat to the health and safety of patients no longer exists, and that rule violations noted in the Emergency Order had been or will be corrected and/or resolved.

## CONCLUSIONS OF LAW

### Conclusion of Law No. 1

The Department of State Health Services (Department) is authorized to enforce and implement the HSC, Chapter 245 (Act), and the rules found at 25 TAC Chapter 139 (Rules), governing the licensing and regulation of abortion facilities in Texas.

### Conclusion of Law No. 2

Whole Womens Health LP d/b/a Whole Womens Health of Beaumont, is no longer a threat to the health and safety of patients under HSC Chapter 245.

### Conclusion of Law No. 3

An Order Lifting an Emergency Order for Revocation is warranted and authorized under HSC Chapter 245.012(c) for the abortion facility license of Whole Womens Health LP d/b/a Whole Womens Health of Beaumont, based upon the above-stated Findings of Fact and Conclusions of Law.