UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE, ALL-OPTIONS, INC., and JEFFREY GLAZER, M.D., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:18-cv-01904-SEB-MJD ) |
| CURTIS T. HILL, JR., in his official capacity, KRISTINA BOX, in her official capacity, JOHN STROBEL, M.D., in his official capacity, and KENNETH P. COTTER, in his official capacity, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION TO DISMISS (DKT. 37)**

Plaintiffs have sued Defendants under 42 U.S.C. § 1983, challenging as unconstitutional a broad swath of Indiana's statutory and regulatory restrictions on providing and obtaining abortions. Dkt. 1. Now before the Court is Defendants' motion to dismiss Plaintiffs' complaint with prejudice. Dkt. 37. *See* Fed. R. Civ. P. 12(b)(1), (6). For the reasons given below, the motion is denied.

**Background**

Plaintiffs are Whole Woman's Health Alliance (WWHA); All-Options, Inc. ("All Options"); and Dr. Jeffrey Glazer ("Glazer"). WWHA "is a nonprofit organization committed to providing holistic reproductive healthcare, particularly abortion care." Compl. ¶ 14. WWHA has applied for a license to operate an abortion clinic in South

1

Bend, Indiana, a point discussed in greater detail below. Further, WWHA "engages in advocacy, education, and community outreach to eradicate abortion stigma." *Id.* ¶ 15. It "devotes considerable time and resources to fighting restrictive abortion laws . . . and helping patients and clients cope with their burdensome impacts." *Id.*

All Options "is a nonprofit organization that . . . promote[s] unconditional, judgment-free support for people in their decisions, feelings, and experiences with pregnancy, parenting, abortion, and adoption." *Id.* ¶ 19. It has an office in Monroe County, Indiana. *Id.* ¶ 22. All Options does not itself provide abortions, but, "[w]hen a client seeks to terminate their pregnancy, All-Options helps them [obtain an abortion] by removing barriers to access" through financial assistance and counseling. *Id.* ¶ 21. "Ultimately, some of All-Options['s] clients must travel [outside of Indiana] to obtain abortion care because the burdens created by Indiana law make it too difficult to obtain timely care in Indiana." *Id.*

Glazer "is a board-certified obstetrician-gynecologist licensed to practice medicine by the State of Indiana. Dr. Glazer is an abortion provider. He intends to serve as the Medical Director of WWHA's prospective South Bend clinic, where he will provide abortion care." *Id.* ¶ 23.

Defendants are Curtis T. Hill. Jr., Attorney General of Indiana ("the Attorney General"); Dr. Kristina Box, Commissioner of the Indiana State Department of Health (ISDH); Kenneth P. Cotter, St. Joseph County, Indiana, Prosecutor; and Dr. John Strobel, President of the Medical Licensing Board of Indiana. All Defendants are sued in their official capacities only. Compl. ¶¶ 24–27.

On August 11, 2017, WWHA applied to ISDH for a license to open an abortion clinic in South Bend. *See* Ind. Code § 16-21-2-10(1). WWHA supplemented its application in response to ISDH inquiries on October 6, 2017, and December 8, 2017. On January 3, 2018, ISDH denied the application. On January 22, 2018, WWHA lodged an administrative appeal. The administrative law judge (ALJ) issued a nonfinal order holding the denial erroneous, but on December 18, 2018, the ISDH Appeals Panel, the agency's "ultimate authority" under Indiana administrative law, *see* Ind. Code § 4-21.5-1-15, reversed; held that ISDH's denial was not arbitrary or capricious; and issued a final order denying WWHA's application. By statute, WWHA had until January 17, 2019, to seek judicial review of that denial, *see* Ind. Code § 4-21.5-5-5, but neither the record in this case nor our review of Indiana public records reveals whether it has been sought.

ISDH regulations provide in applicable part that it "may deny a license to operate an abortion clinic for any of the following reasons: (1) If the licensee or licensees are not of reputable and responsible character. . . . (7) If the application for a license to operate an abortion clinic or supporting documentation provided inaccurate statements or information." 410 Ind. Admin. Code 26-2-5(1), (7). ISDH predicated its initial denial on its determination that "WWHA failed to meet the requirement that the Applicant [be] of reputable and responsible character and the supporting documentation provided inaccurate statements or information." Dkt. 43 Ex. 1, at 2. Specifically, "[i]n response to [ISDH's] request to list all of the abortion and health care facilities operated by WWHA, its parent, affiliate, and subsidiary organizations, WWHA failed to disclose, concealed, or omitted information related to additional clinics." *Id.*

3

The Appeals Panel elaborated that WWHA had failed to be forthcoming about its "affiliates." Dkt. 67 Ex. 1, at 8. WWHA argued, and the ALJ had apparently agreed, that it had properly disclosed all of its "affiliates" as that term is used in the Indiana statutes governing nonprofit corporations like WWHA, Ind. Code art. 23-17. Dkt. 43 Ex. 2, at 3. Relying on those and other scattered statutes as well as a decision of the Indiana Court of Appeals, the Appeals Panel disagreed, finding that several undisclosed abortion providers were "affiliates" of WWHA. Dkt. 67 Ex. 1, at 9. Accordingly, the Appeals Panel held, "[WWHA] provided inaccurate statements to ISDH in [WWHA's] supporting documentation and its license application should be denied pursuant to 410 [Ind. Admin Code] 26-2-5." *Id.* The Appeals Panel did not address whether, because of such inaccuracies or for other reasons, WWHA was not "of reputable and responsible character," 410 Ind. Admin. Code 26-2-5(1), as ISDH initially determined.

This lawsuit was filed on June 21, 2018. The complaint attacks as violative of the First and Fourteenth Amendments to the Constitution virtually or actually the entire universe of Indiana abortion regulations, which, the complaint alleges, serve no medical or other legitimate regulatory goal but instead exist solely to burden provision of and access to abortions.

Defendants' motion to dismiss contends that Plaintiffs' complaint should be dismissed with prejudice "based on well-settled abstention doctrines"; because Plaintiffs "lack standing to bring their claims"; and because the Attorney General "is not a proper party and should be dismissed" under *Ex parte Young*, 209 U.S. 123 (1908). Mot., at 2. Plaintiffs dispute each point.

**Standard of Decision**

Defendants' argument that the Attorney General is not a proper party under *Ex parte Young* arises under Federal Rule of Civil Procedure Rule 12(b)(6). *See Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) (citing *United States v. Cook County*, 167 F.3d 381 (7th Cir. 1999)). "A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency." *Blintz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1046 (W.D. Wis. 2018). A complaint is legally sufficient if it contains a short and plain statement, Fed. R. Civ. P. 8(a), that gives the defendants "'fair notice of what the claim is and the grounds upon which it rests[,]'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (ellipsis omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and pleads facts "sufficient . . . to 'state a claim to relief that is plausible on its face'" by "permit[ting] the court to infer more than the mere possibility" of actionable misconduct by the defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Twombly*, 550 U.S. at 570). "The court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiffs.'" *Blintz*, 317 F. Supp. 3d at 1047 (alterations omitted) (quoting *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008)).

Defendants' challenge to Plaintiffs' standing attacks the court's subject-matter jurisdiction and thus arises under Federal Rule of Civil Procedure 12(b)(1). *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–45 (7th Cir. 2009). As under Rule 12(b)(6), we take as true the complaint's factual allegations, *id.* at 443, except that a "factual" (as opposed to "facial") jurisdictional challenge permits, indeed obligates, the court to look past the pleadings into the truth of the matter, *id.* at 444, without converting

the motion into one for summary judgment. Fed. R. Civ. P. 12(d); *Carter v. Doyle*, 95 F. Supp. 2d 851, 855 (N.D. Ill. 2000) (citations omitted). But Defendants' challenge to Plaintiffs' standing here is largely if not entirely facial.

Defendants' arguments for abstention or deference "do[] not fit neatly into Rule 12(b)(1) or Rule 12(b)(6)." *Bolton v. Bryant*, 71 F. Supp. 3d 802, 808 n.2 (N.D. Ill. 2014) (citing *Carter*, 95 F. Supp. 2d at 855 n.8 (citing cases applying Rule 12(b)(12), Rule 12(b)(6), and both)). Such arguments do not deny the existence of subject-matter jurisdiction; they presuppose it. *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983). On the other hand, as with subject-matter jurisdiction, the interests to be safeguarded by abstaining or deferring are not the parties' but the court's. *Id.*

More importantly, as noted above, only Rule 12(b)(1) permits the court in appropriate circumstances to look past the complaint. Where as here the party invoking abstention moves to dismiss rather than to stay (almost always wrongly, as explained below), application of Rule 12(b)(6) is highly likely to prevent adjudication of the issue on the merits, for it is highly unlikely that the predicates for abstention will have been pleaded in the complaint. Accordingly, in keeping with our general preference for functional approaches, *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 727 (7th Cir. 2011), we apply Rule 12(b)(1) here, as we have in the past. *E.g., Hoffman v. Jacobi*, No. 4:14-cv-00012-SEB-TAB, 2014 WL 5323952, at *2 (S.D. Ind. Oct. 17, 2014) (Barker, J).

**I.** ***PULLMAN* ABSTENTION AND *COLORADO RIVER* DEFERENCE**

"[F]ederal courts have a 'virtually unflagging obligation to exercise the

6

jurisdiction given them.'" *Hammer v. U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 530 (7th Cir. 2018) (ellipsis omitted) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)). "There are, however, 'exceptional circumstances where denying a federal forum would clearly serve an important countervailing interest[.]'" *Id.* (nested quotation marks omitted) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). Such exceptional circumstances may arise under the cases of *Colorado River* or *Railroad Commission v. Pullman Company*, 312 U.S. 496 (1941).

Under *Pullman*, a federal court will abstain from exercising its jurisdiction "'only when (1) there is substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that [a] state court's clarification of state law might obviate the need for a federal constitutional ruling.'" *Wis. Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 150 (7th Cir. 2011) (quoting *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 365 (7th Cir. 1998)). Under *Colorado River*, a federal court will defer to concurrent proceedings in state court if the proceedings are "parallel" and if a "careful[] weighing [of] ten non-exclusive factors" shows deference is warranted. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citing *AAR Int'l Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001)).

Defendants urge us to abstain under *Pullman* from exercising our jurisdiction over this case in light of the administrative proceedings on WWHA's license application, or in the alternative, to defer to those proceedings under *Colorado River*.

7

As an initial matter, even if their application were merited, neither *Pullman* nor *Colorado River* would entitle Defendants to the relief they seek here, that is, dismissal of the entire complaint with prejudice. Mot., at 2. If *Pullman* or *Colorado River* apply, they apply by hypothesis only to so much of Plaintiffs' complaint as overlaps with the administrative proceedings before ISDH. But those proceedings, at most, relate only to the "reputable and responsible character" provision of Indiana's abortion-clinic licensing regulations. 410 Ind. Admin. Code 26-2-5(1). That requirement is but one target, Compl. ¶ 203, of the sweeping challenges Plaintiffs' complaint advances.

Further, "a court abstaining under *Pullman* does not dismiss the action; it retains jurisdiction of the federal claim pending the state court's decision on the state law issue." *Moses v. Kenosha County*, 826 F.2d 708, 710 (7th Cir. 1987). Similarly, under *Colorado River*, "a federal court may stay or dismiss . . . ." *Freed*, 756 F.3d at 1018. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 28 n.37 (1983). "[The Seventh Circuit], however, has consistently held that the proper procedure is to stay. . . . [A] stay, not a dismissal without prejudice, [not to mention a dismissal with prejudice,] is the appropriate procedural mechanism for a district court to employ . . . under the *Colorado River* doctrine." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir. 1985).

Persisting in their demand for dismissal under *Pullman*, Defendants in reply raise a belated argument for a stay under *Colorado River*, but "[r]eply briefs are for replying, not for raising . . . arguments that could have been advanced in the opening brief." *Autotech Techs. Ltd. P'ship v. Automationdirect.com*, 249 F.R.D. 530, 536 (N.D. Ill.

2008) (citations omitted). Defendants' failure to show their entitlement to the relief they seek independently justifies denial of their motion.

That failure notwithstanding, neither *Pullman* nor *Colorado River* applies on the merits. As for *Pullman*, its second element is not satisfied because there is no reasonable probability that a state court ruling will obviate the need for a federal constitutional ruling. *See Wis. Right to Life*, 664 F.3d at 150. "The main purpose of the *Pullman* doctrine is to avoid, if possible, declaring a state statute unconstitutional, by giving the state courts a chance to interpret it narrowly." *Mazanec v. N. Judson-San Pierre Sch. Corp.*, 763 F.2d 845, 847 (7th Cir. 1985). As a general matter, facial vagueness challenges of the type Plaintiffs raise here, Compl. ¶¶ 203–05,[1] are poor candidates for such treatment because there is little a state court's interpretation can do to save the challenged statute. "If a statute is attacked as being excessively vague on its face, meaning that it is susceptible of being misapplied in a variety of possible situations, the state court is unlikely to be able to give it an interpretation that will prevent any of these possible misapplications, so probably abstention would not enable the constitutional issue to be avoided." *Waldron v. McAtee*, 723 F.2d 1348, 1354–55 (7th Cir. 1983) (citing *Baggett v. Bullit*, 377 U.S. 360, 378 (1964)). *Also Wynn v. Scott*, 449 F. Supp. 1302, 1313 (N.D. Ill. 1978) (three-judge panel op.) ("[A]bstention is required if the statute is

---

[1] We understand Paragraph 203 to raise a facial challenge to the "reputable and responsible character" requirement, notwithstanding the "As applied by [ISDH]" *incipit*, because Plaintiffs appear to seek its general invalidation, *see Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016), and because as-applied challenges attack the application of a statute to specific persons or specific conduct, *see Ctr. for Individ. Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012), which Paragraph 203 does not.

ambiguous in that it is capable of two or more meanings. If it is vague in that it simply has no precise meaning, then the federal court need not forbear.").

Moreover, no part of ISDH's final order denying WWHA's license application rested on the challenged "reputable and responsible character" requirement. *See* Dkt. 67 Ex. 1, at 9. Thus, even if a petition for judicial review has been timely filed by WWHA (as noted above, we have found no record of one), any decision on such petition is highly unlikely to construe that requirement, narrowly or otherwise. And if the requirement were to be addressed at all, it is highly likely to be addressed only to the extent of determining, first, whether inaccuracies in documentation supporting a license application are sufficient to sustain a finding of no reputable and responsible character, and, second, whether WWHA actually submitted inaccurate documentation—which depends in turn on the meaning of "affiliates" as a matter of state corporations law. However these questions may be answered, their answers will in no wise obviate the constitutional questions presented by Plaintiffs' lawsuit.

As for *Colorado River*, assuming it may apply to administrative proceedings, its threshold requirement of parallelism is not met. "For a state court case to be parallel to a federal court case . . . there must be 'a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Freed*, 756 F.3d at 1018 (quoting *Lumen*, 780 F.2d at 695). Put differently, "[s]uits are parallel if 'substantially the same parties are litigating substantially the same issues simultaneously in two fora.'" *AAR Int'l*, 250 F.3d at 518 (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)). It is a "'serious abuse of discretion' to abstain under *Colorado River* if 'there

is any doubt' 'that the parallel litigation will be an adequate vehicle for the complete resolution of the issues between the parties,'" *id.* at 520 (quoting *Moses H. Cone*, 460 U.S. at 28), and "any doubt regarding the parallel nature of the [other] suit should be resolved in favor of exercising jurisdiction[.]" *Id.* (citing *Allen v. Bd. of Educ.*, 436 F.3d 401, 403 (10th Cir. 1995)).

As already noted, it is not clear on this record that the denial of WWHA's license application is still being litigated in the state forum. There may therefore be no concurrent state-federal litigation at all. Even if there is, the two actions are not parallel because substantially the same issues are not being litigated in the two fora. As explained above, the issue in the administrative case is whether WWHA submitted inaccurate documentation in support of its license application. *See* Dkt. 43 Ex. 2 (WWHA's petition for administrative review). That issue is no part of the federal lawsuit before us now.

As for weighing *Colorado River*'s "ten non-exclusive factors," *Freed*, 756 F.3d at 1018, Defendants have made no attempt to do so (indeed, they go so far as to deny that there are ten, citing only two in their opening brief and insisting in their reply brief that the proper number is four). We will not undertake that multifactor slog in their stead. In any event, the state and federal actions are not parallel, as we have explained, and "[i]f the actions are not parallel, . . . the court need not address the second part of the analysis." *Id.* (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir. 1988)).

## II. ARTICLE III STANDING

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases'

11

and 'Controversies[.]'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (quoting U.S. Const. art. III, § 2). One of the principal mechanisms for identifying justiciable cases or controversies is the doctrine of standing. *Id.* at 560. The "irreducible constitutional minimum" of standing is injury-in-fact traceable to the conduct complained of and redressable by a favorable ruling from a federal court. *Id.*

"Injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotation marks and citations omitted). Traceability requires that the injury complained of be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quotation marks, ellipses, alterations, and citation omitted). Redressability requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation marks and citation omitted). The burden of proving these three elements rests with the litigant invoking federal jurisdiction by the same quantum of proof as is required generally at each stage of the litigation. *Id.*

Defendants contend that Plaintiffs have not alleged injury-in-fact redressable by a favorable ruling. "'Where at least one plaintiff has standing, jurisdiction is secure and the court will adjudicate the case whether the additional plaintiffs have standing or not.'" *Korte v. Sebelius*, 735 F.3d 654, n.8 (7th Cir. 2013) (alteration omitted) (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011)). We therefore restrict our discussion to Glazer's standing. *See Ezell*, 651 F.3d at 696 n.7 ("The district court's

emphasis on the organizational plaintiffs' standing is puzzling. As we have noted, it's clear the individual plaintiffs have standing.").

As the Seventh Circuit has explained,

> The cases are legion that allow an abortion provider, such as Planned Parenthood of Wisconsin or AMS [or Glazer here], to sue to enjoin as violations of federal law (hence litigable under 42 U.S.C. § 1983) state laws that restrict abortion. These cases emphasize not the harm to the abortion clinic of making abortions very difficult to obtain legally, though that might be an alternative ground for recognizing a clinic's standing, but rather "the confidential nature of the physician-patient relationship and the difficulty for patients of directly vindicating their rights without compromising their privacy," as a result of which "the Supreme Court has entertained both broad facial challenges and pre-enforcement as-applied challenges to abortion laws brought by physicians [such as Glazer] on behalf of their patients."

*Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908, 910 (2015) (quoting *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013)).

Defendants contend that Glazer's "patients do not exist because he does not allege that he provides abortions in Indiana at this time." Br. Supp. 9. That is simply wrong. "Jeffrey Glazer, M.D., is a board-certified obstetrician-gynecologist licensed to practice medicine by the State of Indiana. Dr. Glazer is an abortion provider. . . . Dr. Glazer sues on behalf of himself and his patients." Compl. ¶ 23. If this leaves any room for doubt, obligating us to look into the truth of the matter, such doubt is swiftly dispelled: "I currently provide both surgical and medication abortions to patients at the Indianapolis Clinic for Women . . . in Indianapolis, Indiana. . . . On average, I provide abortions to approximately twenty-five patients per week at the Indianapolis Clinic for Women."

Glazer Decl. (Dkt. 43 Ex. 4) ¶¶ 5–6. As to the challenged licensing regulations, specifically, the complaint adequately alleges that new abortion clinics, which would operate in Indiana but for the challenged licensing regulations, would reduce the severity of the burdens on obtaining abortions for Glazer's patients and allow Glazer to expand his professional practice. Compl. ¶¶ 69, 70, 82–89, 187–88, 190–91, 194–95. Glazer's and his patients' injuries would be addressed by a ruling invalidating and enjoining the challenged statutes. Glazer thus clearly has standing to bring this lawsuit.

### III. *EX PARTE YOUNG*

The Attorney General is sued here in his official capacity, which is equivalent to a suit against the state of Indiana, the entity of which the Attorney General is an agent. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). An unconsenting state is immune from suit in federal court except, as relevant here, under the doctrine articulated by *Ex parte Young*, 209 U.S. 123 (1908). *Council 31 of the Am. Fed'n of State, Cty., & Mun. Emps. v. Quinn*, 680 F.3d 875, 881–82 (7th Cir. 2012).

"The *Ex parte Young* doctrine 'allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law.'" *Id.* at 882 (quoting *MCI Telecomms. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000)). But the state official sued must have "'some connection with the enforcement' of an allegedly unconstitutional statute for the purpose of enjoining that enforcement." *Doe v. Holcomb*, 883 F.3d 971, 975 (quoting *Ex parte Young*, 209 U.S. at 157). Otherwise, he is immune. *See id.* And the connection must be to enforcement specifically, not merely

defense of constitutionality. *Id.* at 976–77 (citing *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976)).

In *Doe*, the Seventh Circuit held that the Attorney General did not have a connection with the enforcement of Indiana's name-change statute sufficient to bring a lawsuit challenging the statute on constitutional grounds within *Ex parte Young*. He "ha[d] not threatened to do anything, and [could] not do anything, to prosecute a violation" of the statute. *Id.* at 977.

The Attorney General, with limited exceptions, *see* Ind. Code §§ 4-6-2-1.1, 12-15-23-6(d), "cannot initiate prosecutions; instead, he may only join them when he sees fit." *Doe*, 883 F.3d at 977 (citing Ind. Code § 4-6-1-6). The Attorney General also "shall consult with and advise the several prosecuting attorneys of the state in relation to the duties of their office[.]" Ind. Code § 4-6-1-6. Finally, the Attorney General "shall represent the state in all criminal cases in the Supreme Court[.]" *Id.* § 4-6-2-1(a). "With the assumption of criminal jurisdiction in 1972 by the Court of Appeals, the same principles heretofore applicable to the Supreme Court are equally binding upon the Court of Appeals . . . and the Attorney General." *State v. Market*, 302 N.E.2d 528, 531 (Ind. Ct. App. 1973). Thus, today, "[t]he Attorney General has the exclusive right and duty to represent the State in all criminal appeals." *State v. Harper*, 8 N.E.3d 694, 698 n.4 (Ind. 2014) (citing Ind. Code § 4-6-2-1; *Market*, 302 N.E.2d at 534)).

The name-change statute challenged in *Doe* carried "no criminal penalties" for its violation. *Doe*, 883 F.3d at 977. Thus, no matter whether the Attorney General could initiate prosecutions, in *Doe* there was simply nothing to prosecute. The *Doe* court

conceded that "the Attorney General could assist a local prosecuting attorney in a perjury prosecution" if a petitioner were to perjure himself on a name-change petition, but it found "that connection . . . too attenuated" to bring the plaintiff's claim within *Ex parte Young*, "especially considering that the Attorney General could not initiate the prosecution himself." *Id.*

We do not read *Doe* to hold that, because the Attorney General cannot initiate criminal prosecutions, the Attorney General is never a proper party to a lawsuit which, as here, *see* Compl. ¶¶ 83, 102, 115, 131, 149, 152–58, challenges the constitutionality of criminally enforceable statutes. If that were so, the Seventh Circuit's discussion would have begun and ended there. Rather, we read *Doe* to hold that possible participation in a collateral criminal prosecution is insufficient to establish a connection with the enforcement of the underlying civil regulatory statute. Many such statutes require submission to public authorities of statements under penalty of perjury. *See, e.g.,* Ind. Code §§ 3-11-4-5.1(b)(1) (application for absentee ballot); 7.1-3-1-27(b) (affidavit of compliance with alcohol retailer regulations); 22-15-5-8(a)(6) (application for initial elevator contractor license); 31-19-5-21(c)(2) (application for copy of putative father's ISDH registration form). If the possibility of a collateral perjury prosecution were a sufficient connection to the enforcement of such statutes, it would indeed "extend *Ex parte Young* past its limits." *Doe*, 883 F.3d at 977.

Here, by contrast, the challenged statutes are directly criminally enforceable. And the Attorney General is intimately bound up with criminal enforcement at every stage after the initial charges are laid—at his option at trial, and by statutory command on

16

appeal. We particularly emphasize the Attorney General's complete and exclusive control over the criminal appeals process, a point that was not raised or considered in *Doe* (unsurprisingly, since, as noted, there was nothing to prosecute there). It seems incredible and unsustainable to hold that the state officer responsible for defending criminal convictions secured under a statute does not have "'some connection'" with the statute's enforcement. *Doe*, 883 F.3d at 975 (quoting *Ex parte Young*, 209 U.S. at 157).

Thus, it is not the case that the Attorney General "would have no power to carry out" an injunction invalidating the challenged statutes. Br. Supp. 12–13. To the contrary, the Attorney General could "consult with and advise" local prosecuting attorneys not to bring a prosecution under the statutes, Ind. Code § 4-6-1-6 (another power of the Attorney General not raised or considered in *Doe*); he could intervene in the trial of the case, if a prosecution were brought, *id.*; and he could confess error before the intermediate and high courts on appeal from a conviction. *Id.* § 4-6-2-1(a). That is sufficient to bring Plaintiffs' claims against him within *Ex parte Young*.

### Conclusion and Order

For the reasons given above:

Defendants' motion to dismiss, Dkt. 37, is DENIED.

IT IS SO ORDERED.

Date: 3/28/2019

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Amanda Lauren Allen
LAWYERING PROJECT
aallen@lawyeringproject.org

Christopher Michael Anderson
INDIANA ATTORNEY GENERAL
christopher.anderson@atg.in.gov

David Patrick Brown
LAWYERING PROJECT
dbrown@lawyeringproject.org

Paul M. Eckles
ATTORNEY AT LAW
paul.eckles@probonolaw.com

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Bradley H. Honigman
ATTORNEY AT LAW
bradley.honigman@probonolaw.com

Kathrine D. Jack
LAW OFFICE OF KATHRINE JACK
kjack@jacklawoffice.com

Diana Lynn Moers Davis
INDIANA ATTORNEY GENERAL
diana.moers@atg.in.gov

Julia Catherine Payne
INDIANA OFFICE OF THE ATTORNEY GENERAL
Julia.Payne@atg.in.gov

Michael M. Powell
ATTORNEY AT LAW
michael.powell@probonolaw.com

Juanluis Rodriguez  
LAWYERING PROJECT  
prodriguez@lawyeringproject.org

Rupali Sharma  
LAWYERING PROJECT  
rsharma@lawyeringproject.org

Erin A. Simmons  
ATTORNEY AT LAW  
erin.simmons@probonolaw.com

Dipti Singh  
LAWYERING PROJECT  
dsingh@lawyeringproject.org

Stephanie Toti  
LAWYERING PROJECT  
stoti@lawyeringproject.org