# In the Matter Of:

*WHOLE WOMAN'S HEALTH ALLIANCE, ET AL.*

*-v-*

*CURTIS T. HILL, JR., ET AL.*

---

**Byron Craig Calhoun, M.D.**

*October 01, 2019*

---

StewartRichardson
DEPOSITION SERVICES

800.869.0873 | www.StewartRichardson.com

*Reporting Driven by Excellence — Since 1975*

INDIANAPOLIS | CARMEL | EVANSVILLE | FORT WAYNE | SOUTH BEND | VALPARAISO

licensed. In other words, it's okay to do it if you had moderate sedation versus mild sedation. I don't see the point of this. This makes no -- this doesn't change my opinion because it also talks about ASA III and other things too. It should be accredited surgical center as well, so this doesn't change my opinion.
Q But the statement is titled "Statement on Patient Safety Principles for Office-Based Surgery Utilizing Moderate Sedation/Analgesia"; is that correct?
A I understand. That's a clarification what they were talking about previously. I mean, this doesn't change what I said or what I shared in my statement.
Q Okay. Let's --
A Because when I'm doing my D&Cs, I'm using moderate sedation or analgesia, so this is the same thing, whether we're talking about D&C for miscarriages and abortions.
Q Okay. Let's take a look at principle No. 6, which is at the bottom of the first page. It says, "Written protocols must be in place to transfer a patient who develops complications or acquires a higher acuity of care to a qualified acute care

facility. The governing body of the office-based surgery practice should conduct a regular review of patient transfers and adverse events and implement focus professional reviews of involved healthcare professionals as indicated."

Did I read that correctly?

A Yes.

Q The updated principles no longer recommend that providers of office-based surgery have admitting privileges or transfer agreements with the hospital; is that correct?

MR. FISHER: Objection, vague.

A That's not actually what it says. It says have a place to transfer a patient. So it still has to have a transfer agreement of some sort. That's wordsmithing. That's what it means. You have to have a transfer agreement with somebody there. You can't just send somebody because you think you have an agreement to nobody who's there. Perhaps there's nobody there to take care of them, which may happen, right.

Q At any of the hospitals where you practiced, has it ever been the case where there's nobody in the hospital to care for a patient who shows up in the emergency department?

A There have been cases where we were otherwise engaged, where they were trying to send patients and we could not accept them because we were not available, yes.
Q And how would having a prior transfer agreement change that?
A Well, it would change in the sense that this individual would have someone specifically they're going to refer to or send to, or they're going to have the ER they could send to, so at least they would call the ER and they could talk to us in the transfer center instead of just saying go to the ER without doing anything else. We'd at least have an agreement in writing that their patients who were going to be patients we were going to take care of and they wouldn't show up unassigned and they wouldn't show up in our emergency room with no -- with no transfer or no evidence of how to take care of them from this particular physician.
Q But if the ER doctors were fully engaged, it wouldn't matter whether there were a prior transfer agreement in place or not; is that correct?
A I misunderstood your question. I was talking about those of us who are in the subspecialists, who they wanted to send us transfers to. No, they would