UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:18-cv-01904-SEB-MJD ) |
| CURTIS T. HILL, JR., *et al.*, | ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION TO DETERMINE THE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION**

This matter is before the Court on Plaintiffs' Motion to Determine the Sufficiency of Defendants' Responses to Requests for Admission. [Dkt. 246.] For the reasons set forth below, Plaintiffs' motion is **GRANTED**.

### I. Background

Plaintiffs brought this action to challenge the constitutionality of five categories of Indiana laws, which are variously enforced through administrative proceedings, civil and criminal penalties, and professional discipline. Plaintiffs also challenge the constitutionality of certain statutes that subject abortion providers to criminal liability for violating specific abortion restrictions and assert that they violate the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the right to free speech under the

First Amendment as incorporated into the Fourteenth Amendment. Plaintiffs allege that Defendants are responsible for the administration, implementation, and enforcement of the challenged laws.

On September 3, 2019, Plaintiffs served thirty Requests for Admission ("RFAs") on Defendants. Plaintiffs now challenge the sufficiency of Defendants' responses to Request Nos. 1-13, 16-18, 20, and 25. [Dkt. 246.]

## II. Applicable Law

Federal Rule of Civil Procedure 36(a) permits a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts . . . [and] the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). Rule 36(a)(4), governing responses to requests for admission, states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). "Whether an inquiry is reasonable depends on the facts of the case." *Brown v. Overhead Door Corp.*, 2008 WL 4614299, at *2 (N.D. Ill. Oct. 16, 2008) (citing *Hanley v. Como Inn, Inc.*, 2003 WL 1989607 (N.D. Ill. Apr. 28, 2005)); *see also Scholz v. Norfolk So. Railway Co.*, 2007 WL 1875980, at *3 (N.D. Ill. June 26, 2007).

Requests for admission help to define the matters in controversy and expedite the trial by narrowing the issues in dispute. If the requesting party believes the responses are inadequate, it may move the Court to determine their sufficiency. Fed. R. Civ. P. 36(a)(6). In evaluating the

sufficiency of the objections, a court should consider: (1) whether the denial fairly meets the substance of the RFA; (2) whether good faith requires that the denial be qualified; and (3) whether the qualifications supplied are good faith qualifications. *United States v. Lorenzo*, 1990 WL 83388 (E.D. Pa. June 14, 1990). "Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6).

### III. Discussion

As an initial matter, Defendants argue that the Court should exercise its discretion to deny Plaintiffs' motion based on Plaintiffs' "lack of diligence," noting that they filed the motion "three months later [sic] and after the close of discovery" and after "both parties' submissions of their Motions for Summary Judgment." [Dkt. 248 at 4.][1] Plaintiffs respond that Defendants "do not assert that they would suffer any prejudice as a result of the timing of Plaintiffs' motion." [Dkt. 254 at 3.]

When a party believes that an answering party has inadequately responded to requests for admission, but lacks diligence in timely pursuing the perceived inadequacies, a motion to determine the sufficiency of an answer should be denied for lack of diligence. *See Packman v. Chi. Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001). This "matter is left to the broad discretion possessed by the district courts to control discovery." *In re Sulfuric Acid*, 231 F.R.D. 331, 333 (N.D. Ill. 2005). "On assessing delay of a moving party, 'courts usually focus on three questions: (i) how long was the delay; (ii) was there an explanation for it; and (iii) what happened during the delay.'" *West v. Miller*, 2006 WL 2349988, at *5 (N.D. Ill. Aug. 11, 2006) (internal citations and quotation marks omitted). An untimely motion to compel may still be

---

[1] In August, 2018, the Court approved the Case Management Plan, as amended, setting October 4, 2019, as the deadline for all discovery and November 8, 2019, as the deadline for dispositive motions. [Dkt. 41 at 7.] In August, 2018, the case was set for a final pretrial conference on August 4, 2020, and a bench trial on August 17, 2020. [*See* Dkt. 42.]

3

granted "if the party demonstrates actual and substantial prejudice resulting from the denial of discovery." *GSI Group, Inc. v. Sukup Mfg. Co*., 2007 WL 1390611, at *2 (C.D. Ill. May 9, 2007).

Plaintiffs correctly note that, "[a]lthough discovery in this case has closed, trial is not set to begin until August 17, 2020, more than six months from now, [], and the parties are still engaged in attempts to resolve outstanding discovery issues." [Dkt. 254 at 1.] This dispute did not arise until October 3, 2019, when Defendants objected to several of Plaintiffs' RFAs. [Dkt. 246-1 at 13.] On November 8, 2019, Defendants moved for summary judgment. [Dkt. 213.] Then, on November 27, 2019, the parties met to confer about the outstanding discovery issues related to Plaintiffs' RFAs. Unable to resolve these issues, Plaintiffs filed this motion on January 16, 2020. [*See* Dkt. 246.] While Plaintiffs filed their motion after the parties had met and conferred, Defendants have failed to demonstrate how they have suffered any prejudice, especially when, as Plaintiffs correctly note, Defendants, themselves, also continued to pursue discovery after the deadline. [*See* Dkt. 247.] Under these circumstances, the Court does not find that Plaintiffs' delay in filing the instant motion amounted to a waiver of the issues raised therein. Accordingly, the Court will consider the merits of the motion.

A. Request for Admission Nos. 1-5 and 13

Defendants object to RFA Nos. 1-5 and 13 to the extent that they "call[] for a legal conclusion." [Dkt. 248 at 5.] RFA Nos. 1-5 and 13 request Defendants to admit the following:

**Request No. 1:**
Indiana does not require doctor's offices to be licensed by the Health Department unless they provide abortions.

**Request No. 2:**
Indiana does not require office-based settings, as defined by 844 Ind. Admin. Code 5-5-13, to be licensed by the Health Department.

> **Request No. 3:**
> Practitioners may provide general anesthesia in unlicensed, office-based settings in accordance with 844 Ind. Admin. Code 5-5-1 to 5-5-22.
>
> **Request No. 4:**
> Indiana does not require any particular medical intervention other than abortion to be provided in a facility licensed by the Health Department.
>
> **Request No. 5:**
> Indiana law does not require the Health Department to conduct annual inspections of licensed hospitals, ambulatory surgical centers, and birthing centers.
>
> **Request No. 13:**
> An emergency transfer agreement with a hospital, such as the one annexed to Dr. Stroud's expert report as Exhibit B, would not satisfy the requirements of Ind. Code § 16-34-2-4.5.

[Dkt. 246-1 at 2-3, 7.] Defendants argue that RFA Nos. 1-5 improperly seek admissions that are "pure legal questions; namely, what Indiana law does or does not require." [Dkt. 248 at 6.] Defendants assert that RFA No. 13 is improper because it "requests a legal conclusion on the statute in general as it applies to emergency transfer agreements without giving material facts which the Defendants can answer." [*Id*. at 7.] Defendants further argue that the use of the term "such as," included in RFA No. 13, is ambiguous and subject to multiple reasonable interpretations, "suggest[ing] something about Exhibit B stands out as a representative example in some particular, but Plaintiffs have not identified what part of Dr. Stroud's report the Plaintiffs are seeking to call into question in terms of what may "satisfy" the statute." [*Id*.]

While a party cannot be asked to admit a legal conclusion, Fed. R. Civ. P. 36(a)(1)(A) permits requests for admissions as to facts, "the application of law to fact, or opinions about either." *See United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009); *Hart v. Dow Chem.*, 1997 WL 627645, at *8 (N.D. Ill. Sept. 30, 1997) (noting that "requests on mixed matters of law and fact or other legal conclusions that directly relate to the facts of the case are authorized"); *see also English v. Cowell,* 117 F.R.D. 132, 135 (C.D. Ill. 1986) (finding requests

5

improperly called for legal conclusions where they asked defendants to "admit to the existence of the statutes under which [p]laintiff [brought] this action"). The Court finds Defendants' objections are not well-taken. As Plaintiffs correctly point out, Defendants, including the State officials and the Health Department, who are responsible for the enforcement of, and providing licenses under, the relevant laws, should "have knowledge of how those laws apply in specific situations." [Dkt. 246 at 3.] RFA Nos. 1-5 do not require Defendants to, for example, interpret a statute, but instead ask them simply to apply the law to the facts and state whether or not certain situations would require a license by Defendant Indiana Department of Health. Instead of a semantic quibble on the wording, Defendants should have also applied their commonsense interpretation of the phrase "such as"—comparing a similar expert report like Dr. Stroud's—and identified this interpretation in their response. Accordingly, Defendants' objections to RFA Nos. 1-5 and 13 are **OVERRULED**; the Court directs Defendants to answer RFA Nos. 1-5 and 13.

B. Request for Admission Nos. 6-8

Plaintiffs move the Court to overrule Defendants' objections to RFA Nos. 6-8. These requests seek the following admissions:

> **Request No. 6:**
> The Health Department does not inspect licensed hospitals at least once each calendar year.
>
> **Request No. 7:**
> The Health Department does not inspect licensed ambulatory outpatient surgical centers at least once each calendar year.
>
> **Request No. 8:**
> The Health Department does not inspect licensed birthing centers at least once each calendar year.

[Dkt. 246-1 at 4.] Defendants object to RFA Nos. 6-8 on the ground that they are vague and require a narrative response. Defendants specifically assert that the requests are "confusing and

unclear [on] what facts Plaintiffs actually wants Defendants to admit or deny in these Requests." [Dkt. 248 at 9.] Such a baseless response by Defendants does not suffice to preserve their objection. When answering a request for admission, Defendants must admit, deny, or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. *See* Fed. R. Civ. P. 36(a); *Cada v. Costa Line, Inc.*, 95 F.R.D. 346, 347-48 (N.D. Ill. 1982) ("Statements of inability to admit or deny are of course permitted by Rule 36, but they must be supported by specific reasons."). As Plaintiffs correctly point out, these requests are straightforward, such that, Defendants either "inspect[ed] the specified facilities at least once each calendar year or [they] d[id] not." [Dkt. 246 at 4.] Thus, Defendants' objections to RFA Nos. 6-8 are **OVERRULED**; the Court directs Defendants to answer RFA Nos. 6-8.

C. Requests for Admission Nos. 9-12

Defendants object to RFA Nos. 9-12 on the basis that they contain undefined terms. [Dkt. 248 at 10.] RFA Nos. 9-12 and Defendants' responses to them are as follows:

> **Request No. 9:**
> Healthcare providers throughout Indiana utilize telemedicine to deliver services to patients.
>
> **Response:**
> Defendants object to this request because the terms "throughout Indiana," "utilize," "telemedicine," and "services" are undefined and render the request incapable of direct admission or denial. Defendants object also because they have no relevant direct knowledge and cannot through reasonable inquiry readily obtain information sufficient to admit or deny the request.
>
> **Request No. 10:**
> St. Joseph Health System, whose hospitals are licensed by the Health Department, has a telemedicine program aimed at providing care to acute stroke patients.
>
> **Response:**
> Defendants admit that hospitals are licensed by ISDH. Defendants object to the remainder of this request because the terms "telemedicine," "aimed," and "care" are undefined and render the request incapable of direct admission or denial. Further, Defendants have no direct knowledge of the St. Joseph Health Systems

7

programs and cannot through reasonable inquiry readily obtain information sufficient to admit or deny the request.

**Request No. 11:**
Beacon Health System, whose hospitals are licensed by the Health Department, operates A telemedicine program to serve patients with urgent care needs.

**Response:**
Defendants admit that hospitals are licensed by ISDH. Defendants object to the remainder of this request because the phrase "telemedicine program to serve patients with urgent care needs" is undefined and because Defendants have no direct knowledge of the Beacon Health System program and cannot through reasonable inquiry readily obtain information sufficient to admit or deny the request.

**Request No. 12:**
Indiana University Health, whose hospitals are licensed by the Health Department, uses telemedicine to deliver a variety of services to patients, including follow-up care to kidney transplant patients.

**Response:**
Defendants admit that hospitals are licensed by ISDH. Defendants object to the remainder of this request because the phrase "uses telemedicine to deliver a variety of services" is undefined and because Defendants have no direct knowledge of the Indiana University Health program and cannot through reasonable inquiry readily obtain information sufficient to admit or deny the request.

[Dkt. 246-1 at 5-7.]

These requests generally require answers of "admit" or "deny," based on the information reasonably available to Defendants. If "admit" or "deny" does not suffice, Fed. R. Civ. P. 36(a) allows a responding party to "qualify an answer or deny only a part of the matter" of which an admission is requested, when good faith requires such qualification or partial denial. The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham,* 255 F.R.D. 474, 478 (N.D. Ind. 2009) (citing *Graham v. Casey's General Stores,* 206 F.R.D. 253, 254 (S.D. Ind. 2002)). While Defendants assert that the lack of

definitions for certain phrases in RFA Nos. 9-12 creates ambiguity,[2] Defendants themselves provide a basic understanding of the definitions for the terms in their response brief, thereby demonstrating they have a common sense understanding of the allegedly objectionable phrases in Plaintiffs' requests. *See Cunningham*, 255 F.R.D. at 478 (citing *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)) (noting that the objecting party's burden "cannot be met by a 'reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence'").

As to RFA Nos. 10-12, Defendants further contend that they are not required to make inquiries of third parties in response to these requests, asserting that "[i]t is true that Defendants regulate these hospitals through the licensure and inspection process, but these private hospitals are not involved in this litigation, are not co-defendants or even parties, and are not working closely with Defendants concerning this case. Absent any such relationship, Defendants are not required to chase down non-party discovery for Plaintiffs." [Dkt. 248 at 13.] A "reasonable inquiry is limited to review and inquiry of those persons and documents that are within the responding party's control." *Hanley v. Como Inn, Inc.*, 2003 WL 1989607, at *2 (N.D. Ill. Apr. 28, 2003). However, under certain circumstances, parties may be required to inquire of third parties to properly respond to requests for admissions. *See, e.g., Hanley*, 2003

---

[2] Defendants argue that the term "telemedicine" is vague because it "could be referring to any number of practices, procedures, or methodologies that occur via phone or the internet between a doctor and a patient or it could be referring to the definition found in statute." [Dkt. 248 at 11.] Defendants further argue that the term "[t]hroughout Indiana" is vague because it could refer to "healthcare providers incorporated in Indiana that provide healthcare services via telemedicine to Indiana patients only; it could refer to healthcare providers incorporated in Indiana that provide healthcare services via telemedicine to both Indiana and out-of-state patients; or it could refer to an out-of-state healthcare provider that provides healthcare services to patients in Indiana via telemedicine." [*Id.*] Finally, as to the term "throughout," Defendants argue that it is "impossible to admit or deny whether something occurs 'throughout' the State of Indiana." [*Id.*]

9

WL 1989607 at *2; *Lambert v. Owens*, 2002 WL 1838163, at *1 (N.D. Ill. Aug. 9, 2002). RFA Nos. 10-12 do not require Defendants to "chase down non-party discovery;" rather, RFA Nos. 10-12 simply requests Defendants, including Defendant the Health Department, to admit whether the referenced private hospitals—which Defendants regulate, inspect, and license—provide such services. Since Defendants have access to these facilities and to the documents necessary to respond to the requests without unreasonable expense or effort, such a third-party inquiry is appropriate. Therefore, the Court **OVERRULES** Defendants' objections; the Court directs Defendants to answer RFA Nos. 9-12.

   D. Requests for Admission Nos. 16-18 and 20

Defendants object to RFA Nos. 16-18 and 20 on the basis that they contain undefined terms and are unduly burdensome. [Dkt. 248 at 14.] These RFAs and Defendants' responses are as follows:

> **Request No. 16:**
> Defendants are not aware of any evidence that Indiana abortion providers fail to adhere to standards of professional practice, as that term is used in Ind. Code § 25-1-9-4, at greater rates than other healthcare providers.
>
> **Response:**
> Defendants object to this request because it is unduly burdensome and would unreasonably require Defendants to comb through untold files and libraries of data in order to determine the answer. Defendants also object because the term "greater rates" is undefined.
>
> **Request No. 17:**
> Defendants are not aware of any deaths or serious injuries that resulted from an abortion performed in Indiana during the period from January 22, 1973, the date that the Supreme Court decided *Roe v. Wade*, to July 1, 2005, the date that Indiana began requiring abortion clinics providing surgical abortions to be licensed.
>
> **Response:**
> Defendants cannot admit or deny this statement because Indiana law did not require anyone to report deaths or serious injuries resulting from abortion at all times during the stated period. Defendants know of individuals who have suffered complications from abortions during the stated period but are uncertain whether those

complications would fit Plaintiffs' term "serious injury," which is undefined. Defendants otherwise object to this request as unduly burdensome as it would unreasonably require Defendants to comb through untold files and libraries of data in order to determine the answer.

**Request No. 18:**
Defendants are not aware of any deaths that resulted from an abortion performed in Indiana during the period from July 1, 2005, to the present.

**Response:**
Defendants cannot admit or deny this statement because Indiana law did not require anyone to report abortion-related deaths at all times during the stated period. Defendants otherwise object to this request as unduly burdensome as it would unreasonably require Defendants to comb through untold files and libraries of data in order to determine the answers.

**Request No. 20:**
Defendants are not aware of any data demonstrating that licensure of abortion clinics enhances physicians' compliance with Indiana laws and regulations concerning the provision of abortion care.

**Response:**
Defendants object to this request and cannot admit or deny it because the terms "demonstrating," and "enhances compliance" are undefined. Defendants otherwise object to this request as unduly burdensome as it would unreasonably require Defendants to comb through untold files and libraries of data in order to determine the answer.

[Dkt. 246-1 at 7.] Defendants argue that a "reasonable inquiry" would require Defendants to "comb through untold files and libraries of data" in order to "compile all data related to the rate of general healthcare providers' adherence to standards of professional conduct, compile all data related to the rate of abortion providers' adherence to standards of professional conduct, and compare the two." [Dkt. 248 at 15.] This objection is not sufficiently specific to preclude discovery. Defendants' contentions might have more force if they had provided an estimate of the costs or hours involved in searching, compiling, and producing the requested information. *See, e.g., Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, 2007 WL 1164970, at *4 (N.D. Ind. Apr. 18, 2007) (denying discovery on basis of affidavits demonstrating numbers of

11

hours required to conduct search). Defendants failed to provide any such affidavits or other evidence describing the costs and time that would be required to comply with Plaintiffs' requests; consequently, they have not carried their burden. *See Boyer v. Gildea*, 2008 WL 4911267, at *5 (N.D. Ind. Nov. 13, 2008) (granting motion to compel where resisting party did not establish "the amount of time" or "the cost of producing" the documents).

Defendants also argue that RFA Nos. 6-18 and 20 contain undefined terms. [Dkt. 248 at 14.] As noted above, a party responding to a request for admission is required to use reason and common sense in interpreting phrases used in the request. These requests ask Defendants to admit or deny whether they are "not aware of"[3] certain data or evidence, thereby narrowing and defining the issues prior to trial. Despite Defendants' objections as to the alleged vagueness and ambiguity of these terms, Plaintiffs' requests lend themselves to a simple "yes" or "no" answer based on the information reasonably available to Defendants. Thus, Defendants' objections to RFA Nos. 16-18 and 20 are **OVERRULED**; the Court directs Defendants to answer RFA Nos. 16-18 and 20.

E. Request for Admission No. 25

RFA No. 25 and Defendants' response to it are as follows:

**Request No. 25:**
Based on its review of the available scientific evidence, the American College of Obstetricians and Gynecologists has concluded that a fetus does not have the capacity to feel pain until at least 24 weeks of gestation.

---

[3] Plaintiffs' assertion that "[i]f [Defendants] are not aware of the specified data and evidence at this stage of their investigation, then they may not present such data or evidence at trial because discovery is now closed. In other words, if they are not aware by now, then it is too late for them to become aware", [Dkt. 246 at 6], ignores Defendants' duty under Rule 36(a) to a make a good faith effort to answer these requests. Rule 36 requires Defendants to describe the specific reasons why, after their reasonable inquiry, they still lacked knowledge sufficient to admit or deny the matter. *See Cada v. Costa Line, Inc.,* 95 F.R.D. 346, 347-48 (N.D. Ill. 1982) ("Statements of inability to admit or deny are of course permitted by Rule 36, but they must be supported by specific reasons.").

**Response:**
Defendants object and neither admit nor deny as no document has been provided for review pursuant to Federal Rule of Civil Procedure 36(a)(2); furthermore, any such document speaks for itself.

[Dkt. 246-1 at 10-11.] Defendants argue that they cannot respond to RFA No. 25 without "being provided the document" under Rule 36(a)(2). [Dkt. 248 at 17.] However, Rule 36(a)(2) applies only to "[a] request to admit the genuineness of a document." As Plaintiffs correctly point out, this request asks Defendants to respond to a "factual issue that has been subject of expert disclosure and deposition testimony," [Dkt. 254 at 5]; it does not ask whether a document is genuine.[4] The request is thus proper, and Defendants' objection is **OVERRULED**; Defendants are directed to answer RFA No. 25.

### IV. Conclusion

Plaintiffs' Motion to Determine the Sufficiency of Defendants' Responses to Requests for Admission [Dkt. 246] is **GRANTED**. Defendants are **ORDERED** to provide complete and unequivocal answers to Plaintiffs' Requests for Admission Nos. 1-13, 16-18, 20, and 25 on or before **March 13, 2020**.

SO ORDERED.

Dated: 2 MAR 2020

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

---

[4] The Court notes that Defendants' objection that the "document speaks for itself" to RFA No. 25, is without merit, *see Diederich v. Dep't of the Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) (noting a response to a request for admission that merely states that documents speak for themselves is not acceptable), and also ironic, given the fact that Defendants also object to the same request on the basis that Plaintiffs had failed to provide this document to them.

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.