UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HALLIANCE, ALL-OPTIONS, INC., JEFFREY GLAZER M.D., )<br>)<br>)<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>TODD ROKITA Attorney General of the State of )<br>Indiana, in his official capacity,  )<br>KRISTINA BOX Commissioner of the Indiana )<br>State Department of Health, in her official )<br>capacity,  )<br>JOHN STROBEL M.D., President of the Indiana )<br>Medical Licensing Board of Indiana, in his official )<br>capacity,  )<br>KENNETH P. COTTER St. Joseph County )<br>Prosecutor, in his official capacity and as )<br>representative of a class of all Indiana prosecuting )<br>attonreys with authority to prosecute felony and )<br>misdemeanor offenses,  )<br>)<br>Defendants.  ) | No. 1:18-cv-01904-SEB-MJD |

**ORDER ON MOTION FOR CLARIFICATION**

Plaintiffs Whole Woman's Health Alliance, All-Options, Inc., and Jeffrey Glazer, M.D. (collectively, "Plaintiffs") have sued Defendants Todd Rokita, Attorney General of Indiana; Kristina Box, M.D., Commissioner of the Indiana State Department of Health; John Strobel, M.D., President of the Medical Licensing Board of Indiana; and Kenneth P. Cotter, St. Joseph County Prosecutor ("the State") under 42 U.S.C. § 1983, challenging as

1

unconstitutional a wide array of Indiana's statutory and regulatory restrictions on providing and obtaining abortions.

On October 9, 2020, we entered our Order granting in part and denying in part the State's Motion for Summary Judgment. [Dkt. 297]. Now before the Court is Plaintiff's Motion for Clarification, [Dkt. 300], file on November 18, 2020, seeking clarification as to whether certain claims survived summary judgment and may proceed to trial. Plaintiff's motion is **granted** to the extent that we offer the clarifications set forth below.

## Discussion

As discussed in detail in our Summary Judgment Order, Plaintiffs' lawsuit challenges virtually the entire panoply of Indiana's statutes regulating abortions, many of which, they say, are facially unconstitutional because they pose undue burdens on a woman's ability to access a previability abortion, as prohibited by the Due Process Clause of the Fourteenth Amendment.

On November 8, 2019, the State filed its Motion for Summary Judgment, asserting that it was entitled to summary judgment on all claims against it. We granted summary judgment for the State on several of these claims, though we found that some claims had not been properly addressed by the parties, while questions of fact precluded a grant of summary judgment on others. Now, the parties request clarification as to whether Plaintiffs' challenges to certain statutory and regulatory provisions survived summary judgment. We address each issue in turn below.

1. *Plaintiffs' Challenges to Indiana's Facility Requirements for Medication Abortion Clinics May Proceed to Trial*

In reviewing the parties' summary judgment submissions with respect to whether Indiana imposed medically unnecessary facility requirements on abortion clinics, we expressed our confusion as to whether Plaintiffs were challenging those facility requirements relating to medication abortions—those abortions induced by ingesting certain medications—or those facility requirements governing surgical aspiration abortions—those abortions, which, as the name may suggest, are more invasive as compared to medication abortions and involve the use suction to empty to the contents of the uterus. We explained:

> We note one area of confusion here that neither party has addressed. Plaintiffs' Complaint takes issue with Indiana's facility requirements governing "facilities providing *medication* abortion." [Compl. ¶ 101(c) (emphasis added)]. However, Plaintiffs' Complaint cites to the Indiana regulations governing facilities providing *surgical* abortion, i.e., the regulations found in 410 Ind. Code article 26. The State's summary judgment briefing addresses the regulations cited by Plaintiffs, that is, those related to surgical abortion facilities. Plaintiffs respond to the State's arguments on these regulations while also criticizing the State for its failure to address their allegations with respect to the regulations governing facilities providing medication abortions, found in 410 Ind. Admin. Code article 26.5. The State replies that the Complaint does not address article 26.5.  Given that the regulations governing surgical abortion facilities are cited in Plaintiffs' Complaint and the parties have briefed the issue of whether these provisions are constitutional, we will review this portion of Indiana's administrative code (410 Ind. Admin Code article 26). Plaintiffs' failure to clarify which article of the Indiana administrative code they are challenging is confusing, especially since their Complaint improperly conflates article 26 and article 26.5.

[Dkt. 297, at n. 17]. Plaintiffs now offer clarification for this confusion, which, as they explain, is attributable to a reorganization of the relevant portion of Indiana's regulatory scheme that occurred after this lawsuit commenced.

3

At the time Plaintiffs initiated this action on June 21, 2018, "the only rules governing abortion clinics existed in article 26—there was no article 26.5." [Dkt. 300 at 2]. Rather, when Plaintiffs filed their Complaint, article 26 housed the regulations for all abortion clinics, including those providing medication abortions as well as surgical aspiration abortions. Accordingly, Plaintiffs' Complaint identified the only regulatory article governing abortion clinics that existed at the time, *i.e.,* article 26, and challenged as unconstitutional specific regulations mandating that abortions clinics providing medication abortion satisfy various facility requirements. [Comp. ¶ 101(c)].

Meanwhile, the Indiana Department of Health (the "Department") was statutorily directed to "adopt separate rules . . . for abortion clinics that perform abortion only through the provision of an abortion inducing drug[.]" Pub. L. No. 173, § 2 (2017) (codified in relevant part at Ind. Code § 16-21-2-2.5(c)(2), (c)(3)(B)). Pursuant to this directive, in July 2019, following a series of temporary emergency rules, the Department separated the regulations governing surgical aspiration abortions from those governing medication abortions. Specifically, the Department kept the requirements governing aspiration abortion in article 26 and moved the requirements governing medication abortion to a newly-created article 26.5. Ind. Reg., tit. 410, Ind. State Dep't of Health, LSA Doc. No. 19-163(F). Article 26.5 went into effect on October 6, 2019. *Id.*

Plaintiffs' Statement of Claims, filed days later on October 11, 2019, stated their intent to prove at trial that "Indiana Code §§ 16-21-1-7, 16-21-2-2.5(a), which authorizes the Indiana State Department of Health to adopt regulations governing abortion clinics,

4

and 410 Indiana Administrative Code 26 and 26.5, regulations governing abortion clinics, are unconstitutional." [Dkt. 203].

Following the State's asserted position that Plaintiffs have not alleged a due process claim with respect to article 26.5, Plaintiffs seek confirmation that their challenges to the facility requirements for medication abortion clinics may proceed to trial. They maintain that the State was sufficiently alerted to the fact that Plaintiffs sought relief against the Department's regulations governing these requirements.

The State responds that no challenges to article 26.5 have been properly alleged, arguing that Plaintiffs' Statement of Claims unilaterally amends their complaint to add this new claim in contravention of Federal Rule of Civil Procedure 15, which required Plaintiffs to seek leave from the Court to so act. The State stresses that Plaintiffs should not be permitted to challenge an entirely new set of regulations than that which is identified in their Complaint. While the State acknowledges that an amended complaint may not have been necessary if all parties understood Plaintiffs' intention was to attack the constitutionality of article 26.5, it asserts that it did *not* understand that this was Plaintiffs' intention.

Though we share in the State's frustrations with respect to Plaintiffs' failure to clarify this unnecessarily muddled issue through summary judgment briefing or some other mechanism, we nonetheless find that Plaintiffs may proceed with their due process claims regarding article 26.5.

It simply cannot be said that Plaintiffs have attempted to add an entirely new claim to this litigation—though best practices may have been for Plaintiffs to clearly articulate

5

the impact of article 26.5 on their challenges through their statement of claims or some other device. Nevertheless, the State has not argued that the creation of article 26.5 altered or amended the substance or content of the regulations governing the facility requirements for medication abortion clinics. The Court's own review of this article reveals that the specific facility requirements once housed in article 26 and challenged in Plaintiffs' complaint have *not* been substantively altered. Indeed, these provisions have generally been copied verbatim from the former article 26 into article 26.5.[1] Plaintiffs' challenges to article 26.5 do not constitute a new claim for relief when the only identifiable change from what is alleged in the Complaint and what Plaintiffs' now wish to challenge is the citation; the facts, the regulatory language, the legal theories, and the relief sought remain virtually the same. *See Poston v. Julson,* 2020 WL 1139834, at *1 (W.D. Wis. Mar. 9, 2020); *Adenekan v. Eli Lilly & Co.*, 2011 WL 2680736, at *1 (S.D. Ind. July 8, 2011).

Additionally, to conclude that the State was not on notice as to precisely what Plaintiffs were challenging in this regard would be improper. It is undisputed that Plaintiffs' complaint clearly alleges that they are challenging Indiana's facility requirements for medication abortion clinics, [Comp. ¶ 101], and specifically those requirements previously codified at 410 Ind. Admin. Code § 26-11-2(a) (sterilization of equipment), 26-11-3 (laundry), 26-17-2(c)(2), (d)(2), (d)(6), and (e)(1), (8) (physical

---

[1] *Compare* 410 Ind. Admin. Code § 26-11-2(a) *with* § 26.5-12-2(a); compare § 26-11-3 *with* § 26-12-3; *compare* § 26-17-2(c)-(e) (amended October 6, 2019) *with* 410 Ind. Admin. Code § 26.5-17-2(c)-(e).

6

plant requirements). [Comp. ¶ 101(c)].[2] At the time this lawsuit was filed and for sixteen months thereafter until article 26.5 took effect, these provisions provided specific facility and physical plant requirements for medication abortion clinics.[3] The substance of these requirements, we reiterate, is generally unaltered by the State's decision to relocate the regulations governing medication abortion clinics to a new article of the Indiana Administrative Code. Additionally, during this sixteen-month period, Plaintiffs conducted and completed discovery on the facility requirements governing medication abortion clinics and deposed witnesses on this subject.[4]

Accordingly, Plaintiffs' intent to challenge the facility requirements for medication abortion clinics is well established by both their Complaint and their conduct in this litigation, and the State was aware, from the outset of this lawsuit, the specific facility requirements for medication abortion clinics that were the subject of Plaintiffs' challenges.[5] Though the Court concedes its confusion on this issue at summary judgment,

---

[2] Plaintiffs' Complaint also challenged former 410 Ind. Code. §§26-10-1(b)(5); 26-13-1, 26-13-3(b)–(c), and 26-17-2(d)(1), (3)–(4); however, these provisions established requirements relating to patient care, anesthesia, scrub facilities, procedure rooms, and surgical equipment that were not carried over to article 26.5. The State has been granted summary judgment on Plaintiffs' challenges to facility requirements concerning surgical facilities.

[3] We note that there was a period of time from January 2019 through July 2019 where the State enacted temporary emergency rules governing medication abortion clinics. The State has not argued that the existence of these temporary rules contributed to any confusion; instead, it has crafted is arguments around the adoption of article 26.5 in July 2019.

[4] Though the State argues that Plaintiffs' inclusion of article 26.5 in its Statement of Claims was improper, it never articulated any challenge to this effect until now. And while the State criticizes Plaintiff for first identifying article 26.5 in its Statement to of Claims filed "almost a year after the deadline to amend the pleadings and a week after close of discovery," Plaintiff's Statement of Claims was filed within days of article 26.5 taking effect, a regulatory change over which they obviously had no control.

[5] To the extent the State asserts that it was confused as to what regulatory provisions the Complaint was referencing given the reorganization of its administrative code, we find such

the State was obviously in a better position to stay apprised of the updates to Indiana's Administrative Code.

For these reasons, we find that Plaintiffs' may pursue their challenges to those regulations governing the facility requirements for medication abortion clinics, now codified within article 26.5. Plaintiffs may not raise regulatory challenges broader than those contained with the Complaint; in other words, they may not challenge specific regulations within article 26.5 unless such regulations relate back to and correspond with a particular regulatory provision of the former article 26 identified in paragraph 101(c) of Plaintiffs' Complaint.

For the sake of clarity, Plaintiffs' pretrial submissions, including their trial brief and proposed findings of fact and conclusions of law, must include the new citations for the facility requirements for medication abortion clinics challenged in its Complaint. Plaintiffs' submissions must also include a table that establishes: 1) the former regulatory citation; 2) the new regulatory citation; and 3) the content of the regulation.

2. *Plaintiffs Must Clarify Their Legal Challenges to Indiana's Reporting Requirements and Judicial Bypass Provisions*

In responding to Plaintiffs' Motion for Clarification, the State raises additional issues following our summary judgment ruling that it believes demand Court clarification.

---

confusion to be unreasonable. As explained, the provisions challenged in the Complaint were, at the time the Complaint was filed, tailored to provisions regulating medication abortion clinics. Not until after the close of discovery was article 26.5 finally effectuated. Given that this change did not occur until this case was in the advanced stages of litigation, the State cannot claim that it was unclear to it the regulatory requirements that Plaintiffs were challenging.

The State first seeks clarification regarding Plaintiffs' challenges to Indiana's parental consent requirements. In their Complaint, Plaintiffs challenged both Indiana's general requirement that a minor obtain parental consent to receive an abortion, Indiana Code section 16-34-2-4(a), as well as various requirements for judicial bypass, codified at Ind. Code § 16-34-2-4(b)–(e) (the "Judicial Bypass" provisions). Though subsection 4(b)-(e) contains many specifications for judicial bypass, Plaintiffs enumerated only the following requirements as problematic in their Complaint: "the requirement that a pregnant minor's application be filed in the minor's county of residence or county in which the abortion is to be performed, Ind. Code § 16-34-2-4(b)," "the prohibition against an abortion provider serving as the minor's next friend," Ind. Code § 16-34-2-4(b), and "the requirement that a physician who believes compliance with the parental consent requirement would have an adverse effect on the pregnant minor file a petition seeking waiver of the requirement within twenty-four hours of the minor requesting the abortion," Ind. Code § 16-34-2-4(c).

The State's summary judgment briefing "addressed the constitutionality of Indiana Code section 16-34-2-4(a) and (b)–(e) as a suite of regulations governing juvenile access to abortions with and without parental consent (as generally permitted under *Bellotti v. Baird,* 443 U.S. 622 (1979)) rather than as discrete statutory directives each being subjected to particularized theories of unconstitutionality." [Dkt. 303, at 6]. The State asserts that this approach was most practical on the grounds that: 1) Plaintiff has "never staked out an argument or theory of illegality" with respect to the subsection (b) and (c)

9

claims specified in the Complaint, and 2) not every provision of subsections (b)-(e) imposes any freestanding burden on juveniles access to abortion.

In our Summary Judgment Order, we granted the State's motion with respect to Indiana's general requirements for parental consent but denied the motion with respect to those provisions that had been left unaddressed by the parties, to wit, the specific portions of the Judicial Bypass provisions identified in Plaintiffs' Complaint.

The State now asserts that "this resolution leaves [it] uncertain as to what specific claims [Plaintiffs are] making with respect to Indiana Code section 16-34-2-4(b)–(e) that remain for trial." It is untenable, says the State, that *every* portion of these provisions is being challenged as unconstitutional. For those specific provisions identified in Plaintiffs' Complaint, the State argues that it has been left in the dark as to Plaintiffs' theory of relief.

The State also asserts that a similar issue exists with respect to Plaintiffs' challenges to Indiana's "Reporting Requirements," which require health providers performing abortions to file a terminated pregnancy report with the Department, which includes specific information relating to each abortion as well as additional information relating to minor patients. Plaintiffs' Complaint generally challenges both the adult abortion reporting requirements and those requirements tailored to minors. In its summary judgment briefing, the State successfully defended the constitutionality of the former, however, its briefing included no specific discussion regarding the additional

10

reporting requirements for minors, § 16-34-2-5(b).[6] Because the Complaint offers little insight as to why Plaintiffs believe this section to be unconstitutional independent from the general reporting requirements, the State explains now that it is unsure what particular challenges to § 16-34-2-5(b) Plaintiffs intend to press at trial.

The State further asserts that Plaintiffs' Statement of Claims, which merely recites that these statutory provisions are unconstitutional, offers no additional clarity into Plaintiffs' legal theories supporting its challenges to Indiana's Judicial Bypass provisions and Reporting Requirements.

The State has not asked us to reconsider our summary judgment ruling, nor does it seek to strike any of the aforementioned claims (though it has confirmed that it would object to any attempt from Plaintiffs to add claims). Instead, it requests that Plaintiffs "set forth precisely what directives of which statutory provisions they intend to challenge at trial, and under what theories they intend to pursue those claims." The State suggests that Plaintiffs file an amended statement of claims explaining what particular challenges to Indiana's statutory and regulatory provisions it intends to press at trial, but agrees that "other procedural vehicles might be equally suitable."

Plaintiffs respond that it is unreasonable for the State to argue now, for the first time, that it has not been adequately apprised of the basis for Plaintiffs' challenges to the Indiana's Judicial Bypass provisions and Reporting Requirements, noting that the State

---

[6] The State asserts that its summary judgment memorandum "argued for the validity of both the juvenile abortion reporting requirements and the adult abortion reporting requirements." However, aside from citing to the statute concerning juvenile abortion reporting requirements, the state presented no analysis regarding its constitutionality.

11

never argued that Plaintiffs failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 8, nor did they move for a more definitive statement of claims pursuant to Rule 12(e). Plaintiffs thus assert that the State should not be afforded "another bite at the [summary judgment] apple," nor do they believe they should be required to provide any additional clarification.

The State, however, has not requested another bite at the summary judgment apple, and we are unsure as to why Plaintiffs are adamant in their refusal to explain what their legal claims and theories are mere months before trial.

Moreover, we are in agreement with the State that, at this stage in the litigation, there should not be such uncertainty as to what *specific* statutory provisions Plaintiffs intend to challenge at trial. Though the State may not have utilized every procedural vehicle available to it to either dismiss or clarify claims that it believes were lacking in sufficient detail, we nonetheless agree that Plaintiffs' Complaint—which challenged *dozens* of statutory and regulatory provisions—Statement of Claims, and summary judgement briefing leave gaps as to *what* exactly Plaintiff intends to present at trial with respect to the claims described above, particularly following our summary judgment ruling, such that additional clarification should be provided.

The parties' have previously been directed to submit trial briefs, as well as proposed findings of facts and conclusions of law, as part of their pre-trial submissions, due no later than two weeks before the final pre-trial conference, currently scheduled for March 2, 2021. However, we find it only equitable to require Plaintiff to provide their clarifications prior to the State's finalization and submission of it trial materials on

February 16, 2021. Accordingly, no later than February 5, 2021, Plaintiff is directed to file an Amended Statement of Claims clearly delineating the *specific* portion(s) of the statutory and regulatory provisions they will challenge at trial as well as a brief summarization of the theories of relief for each challenge. Doing so will not only provide the clarity requested by the State but will assist the Court in identifying the remaining issues for trial.

Plaintiffs may not utilize their Amended Statement of Claims nor their pretrial submissions to broaden the statutory and regulatory challenges identified in the Complaint. With specific respect to the Juvenile Bypass provisions codified at Ind. Code. § 16-34-2-4(b)–(e), Plaintiff may not challenge any portion of these subsections not specifically enumerated in the Complaint; to permit otherwise at this late stage would be unfairly prejudicial to the State.

Both parties must come prepared to final pre-trial conference prepared to discuss the witnesses they intend to call at trial and the scope of testimony of each.

## CONCLUSION

Plaintiffs' Motion for Clarification [Dkt. 300] is **granted** to the extent that we offer the guidance and directives set forth herein.

IT IS SO ORDERED.

Date: 1/26/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF