UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WHOLE WOMAN'S HEALTH )
ALLIANCE; ALL-OPTIONS, INC.; )
and JEFFREY GLAZER, M.D., )
)
        Plaintiffs, )
)
vs. ) CAUSE NO. 1:18-cv-1904-SEB-MJD
) Indianapolis, Indiana
CURTIS T. HILL, JR., Attorney ) Tuesday, January 26, 2021
General of the State of ) 2:03 o'clock p.m.
Indiana, in his official )
capacity; KRISTINA BOX, M.D., )
Commissioner of the Indiana )
State Department of Health, )
in her official capacity; )
JOHN STROBEL, M.D., President )
of the Medical Licensing )
Board of Indiana, in his )
official capacity; and )
KENNETH P. COTTER, St. Joseph )
County Prosecutor, in his )
official capacity, )
)
        Defendants. )

Before the
HONORABLE SARAH EVANS BARKER

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE

APPEARANCES:
FOR THE PLAINTIFFS:    Lawyering Project
                         By:  Dipti Singh
                         3371 Glendale Blvd., #320
                         Los Angeles, California 90039-1825

FOR THE DEFENDANTS:    Indiana Attorney General
                         By:  Thomas M. Fisher
                         302 West Washington Street
                         Indiana Government Center South
                         Fifth Floor
                         Indianapolis, Indiana 46204

```
COURT REPORTER:          Jean A. Knepley, RDR, CRR, CRC, FCRR
                         46 East Ohio Street, Room 309
                         Indianapolis, Indiana 46204


             PROCEEDINGS TAKEN BY MACHINE SHORTHAND
                  COMPUTER-AIDED TRANSCRIPTION
```

1	*(In open court.)*

2	A VOICE:  Good afternoon.

3	A VOICE:  Good afternoon.

4	A VOICE:  Good afternoon.

5	THE COURTROOM DEPUTY:  Jean, our court reporter?

6	THE COURT REPORTER:  Yes.

7	THE COURTROOM DEPUTY:  Jean Knepley, are you on the

8	line?

9	THE COURT REPORTER:  Jean Knepley is on the phone, and

10	I would need to know each counsel available, if it is any

11	different than the list you gave me.

12	THE COURT:  Jean, this is Judge Barker.  I am going to

13	speak to counsel in just a minute, but I think for simplicity

14	sake I am going to get the designated spokespeople for each

15	side rather than have everybody identified so we don't have to

16	have people identified who won't be speaking.

17	THE COURT REPORTER:  That is perfect.  Thank you.

18	THE COURT:  They can listen in and participate, but

19	you won't have to keep track of their names, okay, Jean?

20	THE COURT REPORTER:  Thank you.

21	THE COURT:  Okay.  All right.  Good afternoon, all.

22	This is Judge Barker.  I hope everyone is well.

23	MR. FISHER:  Good afternoon, Judge.

24	MS. SINGH:  Good afternoon.

25	THE COURT:  I don't hear anybody say that you are not

1  well, so I am going to assume that everybody is well.  My notes

2  that I have been provided by Ms. Harves indicate that Dipti

3  Singh is going to be speaking for the Plaintiffs on behalf of

4  the Lawyering Project in Los Angeles; is that right?

5           MS. SINGH:  That is right, Your Honor.

6           THE COURT:  Right.  Will you speak exclusively today

7  for the Plaintiffs, or do I need to have somebody else identify

8  themselves for the record?

9           MS. SINGH:  It will just be me today for Plaintiff.

10           THE COURT:  Okay.  And for the state?  Mr. Fisher, is

11  it going to be you today?

12           MR. FISHER:  It is going to be only me, Your Honor.

13  Thank you.

14           THE COURT:  Okay.  Well, that will simplify things a

15  lot.

16           Are both of you going to be trial counsel?  That is

17  what I need to know.  Will you, Miss Singh?

18           MS. SINGH:  Yes.  I will, Your Honor.

19           THE COURT:  And will you, Mr. Fisher?

20           MR. FISHER:  Yes, Your Honor.

21           THE COURT:  Okay.  So any other lawyers who appear at

22  the trial will be taking their cues from the two of you as the

23  lead trial counsel.  That is how I hear it.  If that is not

24  right, tell me.  Okay.  I assume that that is the case.

25           So we issued earlier this morning an order on the

motion that was filed by Plaintiffs for clarification.  I hope
you got it.  I hope you have had a chance to read it.  It
wasn't all that long, but in an effort to meet you where you
are and clear up some of the confusion, I hope we addressed
some of the issues that you raised.

This is sort of a pretrial of a pretrial, and so I
will try to answer whatever questions you have.  I do have one
suggestion since we are fast approaching on March 15, 2021,
trial date.  You have asked for ten days, which seems excessive
to me in light of the issues and what would be presented on
those days.

I know there is some — I know there are issues with
experts that aren't quite teed up yet.  You have alerted me to
the fact that there are lots of expert witnesses that the
parties expect to call.  So we need to figure out a way to
expedite that as well.

So you asked for this conference.  I think I will just
let you put the ball in play here and tell me what it is you
want me to address because I don't want to have to have two
pretrial conferences as such, and we have another one planned
for about a week or so before the — I guess it is for
March 2nd, so about two weeks before the bench trial.

So what is it that you want me to help clarify today?
Miss Singh, do you want to — you want to tell me what you want
me to talk to you about?

1          MS. SINGH:  Yes, definitely.  Thank you, Your Honor.

2    The parties agree that because of the COVID pandemic an

3    in-person trial creates an undo risk of exposure to COVID-19

4    for everyone involved, including for the witnesses and for

5    counsel who would have to travel to Indiana.  So that is what

6    we wanted to talk to the Court about.

7          From the Plaintiffs' position, that given the nature

8    of the rights at issue; namely, Constitutional deprivations

9    that are inflicting ongoing harm, harm that is exacerbated by

10   the COVID-19 pandemic, as well as the fact that discovery

11   closed over 15 months ago, which means that evidence is getting

12   stale the longer that it takes to get to a trial.

13         Plaintiffs would like to explore the possibility of a

14   virtual trial which could include written witness testimony;

15   for example, written direct examination of witnesses, which

16   might also address some of the issues that the Court flagged

17   about the number of the witnesses and the days that we

18   currently have scheduled for trial.

19         THE COURT:  Have all the witnesses that you intend to

20   call been deposed?

21         MS. SINGH:  Defendant did not depose all of

22   Plaintiffs' witnesses.  They chose not to do that.  Plaintiff

23   did depose all of the Defendants' witnesses.

24         THE COURT:  And did you intend to call any of those

25   witnesses for live testimony, or did you intend to rely on

1    depositions?

2        MS. SINGH:  We, we had intended to -- we believe that

3    we could certainly rely on some deposition testimony.  We also

4    think it would be possible to do written witness testimony for

5    some or even potentially all of the direct examination; but

6    otherwise, we had intended to have live witness testimony if

7    written examination wasn't presented to us as an option.

8        THE COURT:  How would you do the written examination,

9    just have the direct examination be in writing and then have

10   the person appear virtually for cross-examination?

11       MS. SINGH:  Yes, Your Honor.  That is what we were

12   contemplating, written direct.  The objections could also be

13   done in writing, and then, just the cross-examination would be

14   live.  And that could be done virtually.

15       THE COURT:  Mr. Fisher?  Do you have anything?

16       MR. FISHER:  Yeah, yeah.  Thank you, Your Honor.  I

17   think I am in agreement with Ms. Sing that the main thing that

18   we wanted to explore today was the feasibility of actually

19   going forward with a trial of some fashion, given the enduring

20   pandemic.  We would certainly prefer a live, in-person trial,

21   as is typical.  We think that that is most likely to accomplish

22   the functions of having a trial.

23       We are, obviously, also sensitive to the need to

24   resolve this case, and we are open to discussions about

25   alternatives.  But before we have, you know, invested a lot of

1  time and effort into, to take you through how some kind of

2  remote or virtual trial might work, we were interested in

3  getting the Court's reaction; and mainly, where the Court was

4  on this and whether there were already protocols in place to

5  handle a case such as this where there are so many experts and,

6  you know, so many claims at issue, especially when it comes to

7  presenting remote testimony on video and the sort of limits of

8  that technology and the difficulties of handling exhibits in

9  that context.

10       So you know, I -- we haven't thought through, I think,

11  as much as it sounds like Miss Singh has, exactly how this

12  works.  But we wanted to first make sure we were headed, all of

13  us, in the same direction in terms of how we were thinking

14  about the trial.

15       THE COURT:  Well, we have done one civil trial that

16  was a nonjury trial during this COVID time and -- but the

17  witnesses appeared.  So we didn't have to handle everything

18  virtually.  It was -- it was only, in fairness, about a day and

19  a half.

20       So the deposition testimony, even if you were

21  appearing live, we would require you to summarize it into some

22  sort of a written form where the party who proffers the

23  testimony summarizes the deposition, and the other side either

24  objects or supplements the additional deposition testimony.  So

25  if we had depositions of all of these -- well, I will say most

1  of these, that evidence could come in in the summary form.

2  Now, you probably don't want to do that with experts, but it

3  seems to me we need to limit the experts, in any event, so

4  there is not just an overwhelming task.

5       The premium ought to be on the lawyer inquiry of the

6  witness in a virtual format so that I can hear the testimony,

7  assess credibility, ask questions if I have any.  So I am a

8  little leery of having a written direct examination submission,

9  only to have the live part be the cross-examination.  I think

10  you can probably distill the direct.

11       You could supplement with exhibits or summary

12  exhibits, whatever you want to do, but I don't think that it is

13  going to be effective in terms of an understandable trial

14  presentation for one part of a witness's testimony to be

15  written and the other part to be basically live, live inquiry,

16  although transmitted virtual.  So I am not exactly shot up with

17  that.  I might be convinced, but it strikes me that that has

18  got some problems.

19       On handling the exhibits, those can be uploaded to our

20  website or to a website, I should say — not our website, to a

21  website.  And then, everybody can have access to the exhibits

22  from that website.  That will encourage you to get stipulations

23  entered into so that only a few of the exhibits would have to

24  actually be ruled upon, but they could be put into that format

25  that is equally accessible to both sides.

1            One of the thoughts I had as I was going through the
2   status of the case and trying to focus on the issues that still
3   remain, it seems to me that there is some natural groupings of
4   issues.  Maybe one way to do this, is to take a limited number
5   of issues instead of the whole list and go forward with trial
6   on those issues.  If we need to have further trials down the
7   road, we will see, but in terms of the issues that remain
8   unresolved after the summary judgment motions, the first — let
9   me say first, some were not fully developed on summary judgment
10  for one reason or another.

11           The criminal penalties, for example, I, I can't
12  imagine that that would need to be tried.  It was not addressed
13  at summary judgment.  If it were pursued further, it would
14  probably have to be on a summary judgment basis.  The other one
15  that wasn't developed on summary judgment was the judicial
16  bypass provision.  That one is still sort of hanging out there,
17  but one category of issues that might be tried coherently
18  together are at least three.

19           The Indiana in-person examination requirement,
20  Indiana's telemedicine ban, and Indiana's in-person counseling
21  requirement, which seems to be sort of a common thread that
22  runs through those.  And I don't know how your experts play
23  into that, but it seems to me that that is a grouping that if
24  we just pulled out those three issues and started with that
25  trial, that would be a digestible approach.

1    There is a second category, that if we chose to make
2 it first –– I am open to that, but I –– are you still on?
3         MR. FISHER:  Yes.
4         MS. SINGH:  Yes.
5         THE COURT:  If somebody is not muted back there, get
6 your mute on because I can't tell if you are talking to me or
7 not.
8         The second category is the Indiana physician–only law
9 and Indiana's second trimester hospitalization requirement.
10 That seems to me to be sort of a coherent grouping.  So if we
11 took one of those at a time, one group at a time and just tried
12 that and whittled down the preparations for those selective
13 issues and left for another day whatever else we haven't been
14 able to get to, we might, at least, find that we can develop a
15 method that works and is not so cumbersome as to be
16 disadvantageous to either party or to the Court.
17         So I haven't asked you to think about this before, so
18 I am asking you to do sort of an on–your–feet response, and I
19 am wondering, Ms. Sing, what you would think of pulling out
20 those clumps of topics for trial.
21         MS. SINGH:  Just so I understand, Your Honor, the idea
22 would be we do, for example, the first clump that you talked
23 about in March, virtually; and then, we do the other categories
24 at a later date, either virtually or in person, depending on
25 what the world looks like at that point?

1    THE COURT:  Yes.

2    MS. SINGH:  That certainly is something that would

3    be — that would be okay with us, and we would be willing to

4    work with Defendants and the Court on something like that.

5    THE COURT:  What do you think about that, Mr. Fisher?

6    MR. FISHER:  Your Honor, I think I have generally the

7    same reaction.  That sounds workable, and I think we can be

8    certainly open to exploring that further and, you know, that we

9    get this where we need to be.

10   THE COURT:  Okay, good.

11   Well, let me put my thumb on the scale a little bit by

12   stating a preference for the first group that I mentioned, the

13   Indiana in-person examination requirement, the telemedicine

14   ban, and the in-person counseling requirement, and asking that

15   you basically shape your presentations at trial around that

16   grouping.

17   And as you are doing your pretrial prep, do — sorry.

18   As you are doing your pretrial prep, that you think about the

19   witnesses that are essential only to those three topics, as

20   well as the expert witnesses so that we are not, we are not

21   inundated; but rather, you are honing the presentation so that

22   we don't have to use more days than are necessary to get those

23   three teed up.  That ought to help you on your pretrial

24   preparation as well because you, you will have a clearer sense

25   of what they are all going to testify to.

1          What do you want to do about the issues that were not
2    addressed on summary judgment, the criminal penalties
3    provisions, for example?
4          MS. SINGH:  Your Honor, this is Dipti Singh for
5    Plaintiff.  So just one other thought that Plaintiffs would
6    like to raise, along with the others that you had raised as
7    kind of first category is the ultrasound requirement, which
8    Plaintiffs are challenging also under arguable protection
9    claims, and that was not dismissed by the Court in the summary
10   judgment order.
11         THE COURT:  Let me — I am looking at my notes here.
12   I guess there is some coherency in doing it that way.  Do you
13   have a preference, Mr. Fisher?
14         MR. FISHER:  On ultrasound?  I guess I am not — I, I
15   understand the Plaintiffs saying they want to pursue that as
16   part of the trial.  It is not obvious to me that that fits
17   either of those two groupings, Your Honor.  So I don't really
18   have a strong feeling about it.  I am just wondering if that
19   belongs maybe more by itself or with another group.
20         THE COURT:  All right.  I am not sensing the
21   connection to the other three.  Maybe you could explain it,
22   Miss Singh.
23         MS. SINGH:  Your Honor, there are — in-person
24   examination requirement is one that the Court had suggested we
25   try in March.  And the ultrasound requirement is, similarly, in

1    that, in that category of an in-person exam requirement.

2        THE COURT:  Well, we can include it.  I don't want to

3    get past my principle here of trying to limit what we are

4    trying.  But if it fits into your sense of how to position the

5    issues, I am not adverse to it, but I don't want this to get

6    too big on our first crack out of the box because that is the

7    whole point of isolating a few issues.

8        MS. SINGH:  I understand, Your Honor.

9        THE COURT:  Yeah.  So let me, let me say this.  Look

10   at that issue.  If you think it fits in, the in-person

11   examination requirement, then, you can include it.  We are

12   still -- then, we still just have to read topics, basically.

13       MR. FISHER:  Your Honor?

14       THE COURT:  Isn't that right, Miss Singh?

15       MS. SINGH:  Yes.  I think -- I am sorry.  So I think

16   we could include it.  We could certainly categorize it in that

17   way.  I think we can make that workable.

18       THE COURT:  Okay.  Now, Mr. Fisher, you wanted to say

19   something, sir?

20       MR. FISHER:  Oh, sorry.  Thank you, Your Honor.  I am

21   not sure if this matters for the way the Court is thinking

22   about these issues, but one thing to keep in mind is that as I

23   understand it, at least, the other issues:  In-person exam,

24   in-person counseling, and telemedicine, I think that those are

25   all still on the undue-burden challenge.  But the ultrasound,

1    as I understand it, under the equal protection rule, would be a

2    rational basis.  So you know, I am not sure if that factors

3    into the way the Court is trying to think about this as a

4    matter of simplifying the matters, but it does strike me as a

5    distinction.

6            THE COURT:  That would certainly affect the analysis,

7    but I am wondering if it affects the evidence.  Will you be

8    putting in different kinds of evidence, Miss Singh, given the

9    difference in the analytical approach?

10           MS. SINGH:  No, Your Honor.

11           Correct, there would be very substantially similar

12   evidence.  The Plaintiffs have brought equal protection claims

13   on both, on behalf of the providers and patients.  And so while

14   the standard would be different, the evidence would not be

15   substantially different.

16           THE COURT:  I think I can work out the analytical

17   issues without too much difficulty, but if there is an overlap

18   in the evidence, that is what I would like to try to

19   consolidate so that it all comes in at once.  So your point is

20   well-taken, Mr. Fisher, but I think because the evidence would

21   be related or comparable, we will include it in the evidence.

22           MR. FISHER:  Thank you, Your Honor.

23           THE COURT:  Okay.

24           Now, let me go back to the other issue about the

25   things that were not resolved and have not been addressed on

1  summary judgment like the criminal penalties provision.  Are
2  you going to persist in that claim, Miss Singh?
3          MS. SINGH:  Yes.  We do intend to pursue that claim,
4  and the Court's summary judgment order also didn't dismiss
5  Plaintiffs' equal protection claims as it pertained to patients
6  and providers.  And we have challenged all of the law under the
7  equal protection claim as well.
8          THE COURT:  So I mean, do you intend to address the
9  criminal penalties provision at summary judgment?  How are you
10 going to proceed with that?
11         MS. SINGH:  We had intended to pursue the criminal
12 claim at trial, and we do think there is going to be disputed
13 evidence.  And so, we assume that the Defendants are going to
14 dispute, for example, the chilling effect that the criminal
15 penalties have on providers; and therefore, the impact that
16 that has on access to abortion in the State of Indiana.
17         So we don't think that that is something that could be
18 addressed through summary judgment, and we had intended to
19 pursue it at trial because you — we could do that now, the
20 criminal penalties that are associated with the laws that are
21 in the first category now, and then, additional criminal
22 penalties with the laws that will be in the second trial.
23         THE COURT:  Okay.  Well, I, I don't want to add too
24 much to the first trial.  So let's just hold that one in
25 abeyance.  You told me what I want to know; and that is, you

1    want to hold that one for trial.

2         MS. SINGH:  Yes, Your Honor.

3         THE COURT:  How about the judicial bypass provision?

4    It wasn't developed on summary judgment either.

5         MS. SINGH:  We do intend to pursue —— that part of the

6    reason we didn't develop that at the summary judgment is we had

7    understood that to be Defendant's burden.  And so, they hadn't

8    addressed it; and therefore, neither did we.  But we do intend

9    to pursue it at trial.

10        THE COURT:  Let's see.  The mandatory disclosures

11   related to fetal pain, that sort of thing.  Is that going to be

12   a trial issue?

13        MS. SINGH:  Yes, Your Honor.

14        THE COURT:  Okay, but for another day.

15        MS. SINGH:  Yes, Your Honor.  Of course, we would be

16   willing to work with Defendants to consult with them and

17   develop a plan for the subsequent trial if that would be

18   helpful.

19        THE COURT:  That would be really helpful if you would

20   do that.

21        MS. SINGH:  Absolutely.

22        THE COURT:  On my list of the matters that have not

23   yet been resolved, other than the two groupings I gave you, I

24   think I, I think I have now commented on or brought forward all

25   the issues that I know of.  Did I leave anything out?  Hearing

nothing.  I mean, you can tell me at the pretrial if you need
me.  But for now, I think I have got them all.

The motion to exclude or limit expert testimony is not
fully briefed yet, right?  It is supposed to be briefed
tomorrow, right?  Plaintiff?

MS. SINGH:  I believe –– right, but there is one reply
brief that still needs to be filed; and then, it will be fully
briefed.

THE COURT:  Will it come in tomorrow?

MS. SINGH:  That's correct.

THE COURT:  Okay.  So when we have a pretrial, if I
don't get a ruling out on that, I will get it out by no later
than the pretrial.  But I will try to give you an idea.

Does the motion to exclude or limit expert testimony
pertain to the categories that I suggested?  If we go with
Category 1, in other words, the in-person examination,
telemedicine, and in-person counseling, are the expert
witnesses expected for those issues included in the motion to
exclude or limit?

MR. FISHER:  It is –– if I can just address that, Your
Honor.

THE COURT:  Yes.

MR. FISHER:  I think we are talking, really, only
about one expert unless I am misremembering.  But I think that
that is a witness's testimony would probably be relevant to any

1   undue burden claim for any of these.  So yes, it would be

2   relevant.

3           THE COURT:  Okay.  So tell me the witness's name just

4   so I know.

5           MR. FISHER:  Studnicki, John Studnicki.

6           THE COURT:  Spell the last name, please.

7           MR. FISHER:  S-T-U-D-N-I-C-K-I.

8           THE COURT:  Okay.

9           MS. SINGH:  Your Honor, I also believe that there are

10  actually other witnesses at issue.  Plaintiff had also moved to

11  exclude the testimony of Dr. Roth, Doctors Coleman, Calhoun,

12  Goodwine-Wozniak, and Kheriaty.  And Defendants also have a

13  pending Daubert motion regarding Dr. Moseson and Grossman.

14  Those haven't been decided either.

15          THE COURT:  Have they been teed up?  Is there a motion

16  to exclude?

17          MS. SINGH:  Yes.  Those have been filed and

18  are -- everything is fully briefed except with respect to Dr.

19  Studnicki, and that will be completed tomorrow once the reply

20  brief is filed.

21          THE COURT:  All the other Daubert motions are fully

22  briefed, true?

23          MS. SINGH:  That's correct, yes.

24          THE COURT:  We will pull those up and look at them

25  too.  Okay.  Okay.

1          Do you want to talk about which category of cases you

2     want to go forward on, or do you want to talk about it among

3     yourselves and let me know?  How do you want to resolve that

4     issue?  Is there something you want to think about or what?

5          MR. FISHER:  Judge, can I ask a question about how you

6     are thinking about this whole package of issues?

7          THE COURT:  Yes.  You will probably — your question

8     will get farther — will undoubtedly elicit information more

9     detailed than I have come up with, but go ahead and try it.

10          MR. FISHER:  I don't know about that.  My question

11     is — I think it will be answered, but I want to make sure.  As

12     you look at this series of trials that we are — over discrete

13     sets of issues, do you contemplate one omnibus ruling at the

14     end of all of it, or do you contemplate sort of rulings, you

15     know, going in response to each trial, you know, so we would

16     have a series of rulings before the ultimate final judgment?

17          THE COURT:  Well, really, I haven't thought that out,

18     but my initial thought, subject to change, because I am

19     wandering into this strategy with you here.  I have not

20     presented a fully formed idea, but I am anticipating that I

21     would rule on the issues that have been presented, and like a

22     partial summary judgment and then the next one and whatever

23     rather than holding the ball for a final ruling.

24          MR. FISHER:  Okay.

25          THE COURT:  Because for one thing, it allows me to

1   rule while I am still thinking about it without putting it off
2   too long.  Do you want to comment on the wisdom of that,
3   Mr. Fisher?

4        MR. FISHER:  I am only thinking about you are likely
5   to have witnesses that will testify in multiple trials so to
6   speak, and ultimately, you are going to be making
7   determinations about those witnesses.  And so, will those
8   determinations as to Trial 1 affect what happens in Trial 2 and
9   Trial 3?  Is that the way you would like for it to play out?

10        I don't — I am not pretending I have the answer on
11   this.  I am just sort of thinking through that that is one
12   wrinkle that could affect how each trial goes, and the way you
13   hold your ruling towards the end, then you make it sort of, to
14   the extent you are making credibility determinations, you make
15   one, and it affects everything you do, I suppose.  But it all
16   comes at once as opposed to, you know, early on and then having
17   to sort of absorb that and react to it for the next trial.

18        THE COURT:  Well, the credibility determinations are
19   usually made in the context of the issues being addressed by
20   the witness.  So I mean, I can't imagine that I would issue a
21   ruling that says that Witness A is unbelievable on all counts,
22   but on the three issues before me, that witness may be not
23   credible on those three issues.  But it doesn't mean that the
24   witness wouldn't be credible otherwise.  So I was tailoring it
25   to what I have to decide.

1            MR. FISHER:  Okay.

2            THE COURT:  I think that would work.

3            You want to comment on these matters, Miss Singh?

4            MS. SINGH:  No, Your Honor.  That makes sense to us.

5    I don't have anything additional to add to that.  I am happy to

6    address Your Honor's previous question if that would be

7    helpful.

8            THE COURT:  Yes, I would like to know what you think.

9            MS. SINGH:  In terms of figuring out the subsequent

10   round, it might make sense for — at least for Plaintiffs to go

11   back and think about that a little bit more and then confer

12   with Defendant to come up with a plan that we can, then,

13   present to the Court.

14           THE COURT:  Okay.  It would be all right with me if

15   you imagined a different grouping that would be more efficient

16   or would use your witnesses more effectively, that sort of

17   thing.  This was how it looked to me, that there was sort of a

18   natural alliance among them.  But if you have a different sense

19   of it, you should tell me that.  But what I don't want to do is

20   make it either too big or too small a clump, because we will

21   lose —

22           MS. SINGH:  Understood.

23           THE COURT:  — we will lose the advantages of doing it

24   this way if we are not somewhat disciplined in choosing the

25   issues.

1          MS. SINGH:  That makes sense.  That makes sense to

2    Plaintiff, Your Honor.  We will keep that in mind in thinking

3    about those subsequent rounds for the initial one as well.

4          One question I did just want to confirm with you was,

5    all of the witness testimony, it sounds like you would like to

6    be presented virtually so there won't be written witness

7    examinations?

8          THE COURT:  That is my preference, but you know,

9    properly crafted, properly honed, you know, the areas of

10   agreements to your stipulations, put the exhibits in the

11   website so everybody can get to them so we can, you know, move

12   quickly through it.

13         MS. SINGH:  Okay.  Thank you.

14         THE COURT:  I am confident I will have a clear

15   understanding of it if I hear the witness testimony in a trial

16   setting.

17         MS. SINGH:  Okay.  Thank you.

18         THE COURT:  Okay.  So I don't have anything else on my

19   list, but I did convene this conference at your request.  So if

20   you have something else you want to raise, Miss Singh, I will

21   hear from you first as Plaintiff.

22         MS. SINGH:  Nothing further from Plaintiff.  Thank

23   you, Your Honor.

24         THE COURT:  Mr. Fisher?  Anything from you, sir?

25         MR. FISHER:  No.  Thank you, Your Honor.  Appreciate

1    the conference.

2            THE COURT:  Okay.  Good.  I think we made a lot of

3    headway.

4            Would somebody send me in the form of a notice or a

5    memo — it doesn't have to be elaborate or anything — the

6    results of your discussions between the lawyers on both sides

7    and advise me as to where things stand for the pretrial so I

8    know sort of what to put on that agenda now, what else needs to

9    be ruled on so that we can use that time on March 2nd

10   effectively?  I don't want to have to rehash all of this.  So

11   if you will just give me your own sort of analysis of what

12   needs to be covered in that trial to make sure we are all ready

13   to go, that will be helpful.

14           MR. FISHER:  I am sorry, are you looking for a joint

15   filing there, Your Honor, or something from each?

16           THE COURT:  Well, if you can agree to it, it will be

17   great to have it joint.

18           MR. FISHER:  Okay.

19           THE COURT:  Okay?

20           MS. SINGH:  Yes.  Thank you.

21           THE COURT:  All right.  Very good.  Thank you both.

22   Thank you all, and thank you, madam court reporter, for tuning

23   in as well.

24           THE COURT REPORTER:  Thank you.

25           (Concluded at 2:39 p.m.)

CERTIFICATE OF COURT REPORTER


        I, Jean A. Knepley, hereby certify that the

foregoing is a true and correct transcript from reported

proceedings in the above-entitled matter.



/S/ Jean A. Knepley                  January 27, 2021
JEAN A. KNEPLEY, RDR/CRR/CRC/FCRR    Date
Official Court Reporter
Southern District of Indiana
Indianapolis Division