UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE, ALL-OPTIONS, INC., JEFFREY GLAZER M.D., <br><br> Plaintiffs, <br><br> v. <br><br> TODD ROKITA Attorney General of the State of Indiana, in his official capacity, <br> KRISTINA BOX Commissioner of the Indiana State Department of Health, in her official capacity, <br> JOHN STROBEL M.D., President of the Indiana Medical Licensing Board of Indiana, in his official capacity, <br> KENNETH P. COTTER St. Joseph County Prosecutor, in his official capacity and as representative of a class of all Indiana prosecuting attonreys with authority to prosecute felony and misdemeanor offenses, <br><br> Defendants. <br><br> INDIANA DEPARTMENT OF CORRECTION, Marion Superior Court, <br><br> Interested Parties. | No. 1:18-cv-01904-SEB-MJD |

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY**

Plaintiffs Whole Woman's Health Alliance, All-Options, Inc., and Jeffrey Glazer, M.D. (collectively, "Plaintiffs") have sued Defendants Todd Rokita, Attorney General of Indiana; Kristina Box, M.D., Commissioner of the Indiana State Department of Health; John Strobel, M.D., President of the Medical Licensing Board of Indiana; and Kenneth P. Cotter, St. Joseph County Prosecutor ("the State") under 42 U.S.C. § 1983, challenging as

unconstitutional a wide array of Indiana's statutory and regulatory restrictions on providing and obtaining abortions.

Now before the Court is the State's Motion to Exclude or Limit Expert Testimony at Trial.[1] For the reasons set forth herein, this motion is **denied.**

## Standard of Review

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington N. Santa Fe Ry. Co*., 765 F.3d 765, 771 (7th Cir. 2014). Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Where the "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire*, 526 U.S. at 149 (*quoting Daubert*, 509 U.S. at 592).

## Discussion

---

[1] Plaintiffs have also filed a motion to exclude, which we address in a separate order.

Pursuant to *Daubert* and Rule 702, the State requests an order excluding the following opinions of two of Plaintiffs' experts, Dr. Heidi Moseson, an epidemiologist specializing in sexual and reproductive health, and Dr. Daniel Grossman, a practicing obstetrician-gynecologist.

### I. Dr. Moseson May Offer Her Proposed Testimony Regarding the Alleged Burdens Imposed by the Challenged Laws

The State first seeks to exclude Dr. Moseson, who has been designated by Plaintiffs to testify as to the burdens imposed by the challenged laws, from offering any opinions at trial. The State contends that because Dr. Moseson has not performed any scientific analysis that would qualify her to opine on the causal relationship between the challenged laws and potential burdens to abortion access in Indiana, her conclusions regarding such burdens lack a foundation and should be excluded at trial. More specifically, the State faults Dr. Moseson for failing to conduct a formal causal analysis of the challenged laws' effects on Indiana's abortion rate, nor any analysis proving causation between the challenged laws and potential burdens. In the absence of a causal analysis of this form, the State argues that Dr. Moseson's conclusions are unsupported by a scientifically valid methodology.

There is no dispute that Dr. Moseson has not conducted such an analysis; rather, Plaintiffs maintain that Dr. Moseson's testimony at trial will not be proffered to prove *causation*. Instead, Dr. Moseson intends to present data supporting her *inferences* that the challenged laws create burdens to access, including "delay[ed] access to abortion care and/or increase[d] [] cost of care." As Plaintiffs explain, such burdens are not captured in

the State's abortion rate, and thus this figure is not an appropriate measure by which to determine whether the challenged statutes are unduly burdensome. In any event, Dr. Moseson *did* review Indiana's abortion rates, and, following her examination of alternative explanations, concluded that Indiana's abortion laws were likely a contributing factor to its low abortion rates. She did not perform a causal analysis in reviewing the underlying data; however, Plaintiffs maintain that the purpose of her testimony is not to prove causation. It is undisputed that she relied on ample, reliable data in forming her opinions.

We extract from the parties' briefing two issues: whether Dr. Moseson was required to perform a quantitative causal analysis in order to provide reliable expert opinions regarding the impact of the challenged laws, and whether, to prevail, Plaintiffs must prove that the challenged laws have caused Indiana's abortion rate to decline. Though the latter issue arguably confronts a legal question in this case more so than the precise issue as to the inadmissibility of Dr. Moseson's testimony, we nonetheless will briefly address it here.

Regarding the first issue, the State has cited no authorities establishing that such an analysis is required. Instead, they parrot the undue burden standard (that a law is unconstitutional if it creates undue burdens for a large fraction of women seeking abortions),[2] followed by their unsubstantiated argument that this standard requires proof of scientific causation. The Supreme Court has not imposed such a demanding causation

---

[2] *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2312 (2016), as revised (June 27, 2016)

standard; rather, it has stated that plaintiffs "satisfy their burden to present evidence of causation" by presenting direct testimony and evidence establishing the existence of obstacles as well as through the "plausible inferences" that may be drawn from such evidence. *Hellerstedt*, 136 S. Ct. at 2313 (rejecting dissent's contention that plaintiffs had not fulfilled their burden of proof by "simply point[ing] to correlation and call[ing] it causation.").

Here, Dr. Moseson is expected to present data from which she purportedly drew plausible inferences regarding the impact of Indiana's abortion laws on women seeking abortion services. It is undisputed that she is a qualified epidemiologist, and the validity of the data on which she relied in forming her opinions so far has not been challenged. The State's *only* objection is that her conclusions were not derived from causal analysis, but their contention that such an analysis is required is unsubstantiated. Accordingly, we deny the State's request to exclude Dr. Moseson's testimony on this basis.

We also discern based on the State's briefing on the pending motions to exclude a belief that a law cannot create an undue burden for a large fraction of women seeking access without necessarily causing the State's abortion rate to decline. This assumption appears based on the view that if a statute does, in fact, impose such a burden, the State's abortion rate would reflect it. Thus, other burdens that women may confront in their pursuit of abortions need not be considered.

The State, again, provides no legal support for this interpretation of the undue burden test. We find this interpretation to be unreasonable in light of the many instances where courts, in applying the undue burden standard, have considered various burdens

imposed on women attempting to access abortion services, even if they might ultimately be successful in their pursuits of care. *See, e.g., June Med. Servs. L. L. C. v. Russo*, 140 S. Ct. 2103, 2108 (2020) (Breyer, J., plurality op.) ("Those women not altogether prevented from obtaining an abortion would face other burdens . . . 'longer waiting times, and increased crowding' as well as risks posed by delay in abortion care and 'increased driving distances'"); *Hellerstedt*, 136 S. Ct. at 2313 (holding as unconstitutional Texas's admitting privileges requirement that resulted in a large fraction of women having to travel hundreds of miles for abortion services); *Planned Parenthood of Wisconsin, Inc. v. Van Hollen*, 738 F.3d 786, 799 (7th Cir. 2013) (affirming district court's finding of undue burden where the challenged law subjected patients to "weeks of delay" and "nontrivial travel burden[s]"). Indeed, our inquiry will turn on whether the challenged laws "place substantial obstacles in the path[s]" of a "large fraction" of women seeking abortion services, not whether this large fraction of women is altogether prevented from securing abortions. *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 894 (1992).

Moreover, in determining whether a law creates an undue burden for a "large fraction" of women, "[t]he proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id.* at 894. In *Casey*, for example, the Supreme Court examined the constitutionality of Pennsylvania's spousal notification provision. The women for whom this law was relevant were those "married women seeking abortions who do not wish to notify their husbands of their intentions and who do not qualify for one of the statutory exceptions to the notice requirement." *Id.* at 895. Though the spousal notification requirement was therefore estimated to affect, at

most, "only one percent of the women who obtain abortions," the Supreme Court nonetheless struck down this provision, explaining that "[t]he analysis does not end with the one percent of women upon whom the statute operates; it begins there." *Id.* at 894. In that instance, given the relatively few abortion-seeking women affected by the challenged law, the impact on the statewide abortion rate if these women had been prevented from securing abortions would presumably have been negligible. By the State's logic, this would suffice to establish the provision's constitutionality. But the State's logic has not been adopted by the Supreme Court, which focused instead on the obstacles that this subset of women would confront in their pursuit of abortion services.

Accordingly, we deny the State's motion to exclude Dr. Moseson's expert opinions.

## II. Dr. Grossman May Offer His Opinions on the Subjects Identified in His Expert Report

The State argues that Dr. Grossman should be excluded from testifying on three subjects where he purportedly lacks expertise: medical ethics, mental health, and fetal pain.

### 1. Dr. Grossman May Offer Testimony Regarding His Opinions on Informed Consent

The State contends that Dr. Grossman—a practicing obstetrician-gynecologist, a Fellow of the American College of Obstetricians and Gynecologists ("ACOG"), and the director of an interdisciplinary research institute focused on reproductive health—is not qualified to offer expert opinions on medical ethics, given that this area is not one on which he has conducted research, nor has he written scholarly materials.

Plaintiffs do not dispute that Dr. Grossman is not qualified to offer expert testimony relating to medical ethics; they counter that Dr. Grossman will not be offered as an expert in this field. Rather, his expert opinions relate to the area of informed consent, that is, "the process by which a healthcare provider educates a patient about the risks, benefits, and alternatives of a medical procedure so that the patient can make a voluntary decision about whether to undergo that procedure." [Dkt. 278, at 2]. Specifically, Dr. Grossman is expected to testify regarding the purpose of the "informed consent process in medicine, the application of informed consent principles to abortion care, the ability of adult and adolescent patients to provide informed consent to abortion care, and the ways in which Indiana's mandatory disclosure laws violate principles of informed consent." [*Id.*]. Plaintiffs maintain that Dr. Grossman is qualified to provide these opinions based on his education, training, and experience. As a medical doctor possessing significant clinical experience with securing informed consent from patients, including abortion patients, Plaintiffs maintain that Dr. Grossman is qualified to testify concerning informed consent, both generally as well as specifically, within the context of abortion care.

The State responds that Dr. Grossman cannot opine on the "purpose" or "principles" of informed consent without offering opinions about medical ethics, a subject on which he has no qualifications. The State nonetheless agrees that he may testify as to his own practices and experiences, though it insists that he does not have sufficient expertise "in the theoretical underpinnings [of medical ethics] to offer opinions about what doctors do or should do in Indiana." [Dkt. 283, at 4]. The State's primary

objection to Dr. Grossman's qualifications appears to be that he lacks sufficient familiarity with differences in medical ethical theories.

This objection, however, is too vague for us to sustain. The State does not articulate what ethical theories it believes are critical to one's qualifications as an expert on informed consent, nor do its proffered deposition excerpts establish that Dr. Grossman is unqualified to opine on this issue.[3] Dr. Grossman's purported unfamiliarity with an unidentified ethical theory does not disqualify him from offering his opinions related to informed consent, which opinions appear grounded in his years of professional experience in this area. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718, 2000 WL 709895 (7th Cir. 2000) "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.")

Though "informed consent" may arguably be a subset of "medical ethics," we do not agree that Plaintiffs have attempted to mischaracterize or broaden the scope of Dr. Grossman's proposed testimony as outlined in his expert report. The State does not contest that Dr. Grossman's education, training, and experience qualify him to understand the basic purposes and principles behind informed consent, nor do they challenge his

---

[3] We cannot adopt the State's belief that these excerpts establish that Dr. Grossman is unqualified to offer testimony on informed consent on the grounds that he is "unfamiliar with basic [] concepts" of informed consent. [Dkt. 272, p. 5-6]. For example, the State argues that Dr. Grossman "does not even know that other models of informed consent exist," thus rendering him unqualified to opine on this subject. [*Id*. at 6]. However, a review of the proffered deposition excerpt reveals that the State's questions regarding such models generated vagueness objections from counsel and requests for clarification from Dr. Grossman. [Grossman Depo., p. 50-51, 221-22].

significant clinical experience in obtaining informed consent from abortion patients, which qualifies him to offer opinions specifically anchored to the issue of appropriately securing informed consent from this population. Dr. Grossman's testimony is, in fact, limited to these issues. There is thus no serious dispute over Dr. Grossman's qualifications or the foundations for his expert opinions.

Accordingly, Dr. Grossman will be permitted to testify as to his opinions on informed consent at trial. We accept Plaintiff's stipulated limitation that Dr. Grossman will not offer any broader opinions on the issue of medical ethics.

2. *Fetal Pain & Mental Health*

Finally, the State contends that Dr. Grossman is unqualified to proffer expert opinions on the subjects of fetal pain and the mental health impact of abortion. The State's objections to Dr. Grossman's testimony on these issues were fully addressed and resolved in our October 9, 2020 Summary Judgment Order [Dkt. 297, at p 10-14]. Consistent with the analyses articulated therein, Dr. Grossman will be permitted to offer at trial his opinions on fetal pain and mental health. The State's motion to exclude these opinions is thus denied as moot.

## CONCLUSION

The State's Motion to Exclude or Limit Expert Testimony at Trial [Dkt. 272] is **denied.**

IT IS SO ORDERED.

Date: 2/19/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF