# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH ALLIANCE; ALL-OPTIONS, INC.; and JEFFREY GLAZER, M.D., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  CASE NO. 1:18-cv-1904-SEB-MJD  CIVIL ACTION |
| Plaintiffs, | |
| v. | |
| TODD ROKITA, Attorney General of the State of Indiana, in his official capacity; KRISTINA BOX, M.D., Commissioner of the Indiana State Department of Health, in her official capacity; JOHN STROBEL, M.D., President of the Medical Licensing Board of Indiana, in his official capacity; and KENNETH P. COTTER, St. Joseph County Prosecutor, in his official capacity. | |
| Defendants. | |

**PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................1

ARGUMENT ..............................................................................................................................5

I.   THE COURT HAS AUTHORITY TO ENJOIN ANY PORTION OF THE ULTRASOUND REQUIREMENT THAT IMPOSES AN UNCONSTITUTIONAL BURDEN ................................................................................5

II.  THE ULTRASOUND REQUIREMENT IS UNCONSTITUTIONAL TO THE EXTENT IT IMPOSES A TWO-TRIP REQUIREMENT ON CERTAIN ABORTION PATIENTS. ..................................................................................................7

CONCLUSION ...........................................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Ayotte v. Planned Parenthood of Northern New England*,
    546 U.S. 320 (2006)..................................................................................................6

*Box v. Planned Parenthood of Indiana & Kentucky, Inc.*,
    141 S. Ct. 184 (2020)..................................................................................................2

*Citizens United v. FEC*,
    558 U.S. 310 (2010)...............................................................................................5, 7

*Edgewood Manor Apartment Homes, LLC v. RSUI Indemnity Co.*,
    733 F.3d 761 (7th Cir. 2013) ......................................................................................5

*Emley v. Wal-Mart Stores, Inc.*,
    No. 1:17-cv-02350-SEB-TAB, 2020 WL 509172 (S.D. Ind. Jan. 31, 2020) .......................5

*June Medical Services L.L.C. v. Russo*,
    140 S. Ct. 2103 (2020)................................................................................................2

*Planned Parenthood of Indiana & Kentucky, Inc. v. Commissioner Indiana State Department of Health*,
    273 F. Supp. 3d 1013 (S.D. Ind. 2017)..................................................................1, 2

*Planned Parenthood of Ind. of & Ky., Inc. v. Comm'issioner of Ind. Department of Health*,
    823 F. App'x 440 (7th Cir. Sept. 30, 2020) ...............................................................3

*Planned Parenthood of Indiana. &and Kentucky., Inc.*,
    896 F.3d 809 (7th Cir. 2018) ......................................................................................2

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
    505 U.S. 833 (1992)....................................................................................................8

*Whole Woman's Health Alliance v. Hill*,
    493 F. Supp. 3d 694 (S.D. Ind. 2020) .........................................................................3

### STATUTES

Ind. Code § 16-34-2-1.1(a)(5)..............................................................................................1, 8

### RULES

Federal Rule of Civil Procedure 59(e) ....................................................................................6

**PRELIMINARY STATEMENT**

In addressing Plaintiffs' challenge to Indiana's Ultrasound Requirement, this Court possessed authority to consider and enjoin the unduly burdensome requirement that an ultrasound must occur eighteen hours prior to an abortion. That timing provision, which was enjoined by another court in this District when Plaintiffs filed the Complaint and when this Court issued its summary judgment decision, is responsible for many of the burdens currently imposed by the Ultrasound Requirement because it acts as a de facto two-trip requirement for certain patients. Indeed, this Court determined based on the evidence at trial that a similar two-trip requirement created by the In-Person Counseling Requirement imposed an undue burden on abortion access.

To the extent the Court's determination that the Ultrasound Requirement passes constitutional muster was predicated on a lack of authority to address the timing provision, Plaintiffs respectfully request reconsideration of the judgment. Plaintiffs' challenge to the Ultrasound Requirement as a whole necessarily encompassed the timing provision, and the Court has authority to grant narrower relief than Plaintiffs requested and enjoin any part of the statute necessary to remedy a constitutional violation.

**BACKGROUND**

In their June 21, 2018 Complaint, Plaintiffs challenged Indiana's "<u>ultrasound requirement</u> codified at Ind. Code § 16-34-2-1.1(a)(5), to the extent it requires providers to perform, and patients to undergo, often redundant and medically unnecessary ultrasound examinations." Compl. ¶ 130(c). The statute mandates performance of the ultrasound at least eighteen hours before an abortion, but that timing provision had already been preliminarily enjoined in a separate action when this case was filed. *See Planned Parenthood of Ind. & Ky., Inc. v. Comm'r Ind. State Dep't of Health*, 273 F. Supp.3d 1013, 1043 (S.D. Ind. 2017), *aff'd* 896 F.3d 809 (7th Cir. 2018),

*cert. granted sub nom. Box v. Planned Parenthood of Ind. & Ky., Inc.*, 141 S. Ct. 184 (2020) (Mem.); Compl. ¶ 130(d) n.46. As a result, the Complaint noted that the enjoined portion of the statute was "not challenged here." Compl. ¶ 130(d) n.46. The Complaint did, however, ask the Court to enjoin "any challenged mandatory disclosure or waiting period law *or portion thereof* that is unconstitutional. Compl. 41 (Request for Relief 1(j)) (emphasis added). And it classified the Ultrasound Requirement as a mandatory disclosure and waiting period law. Compl. ¶ 130(c).

In enjoining the timing provision of the Ultrasound Requirement, Judge Tanya Walton Pratt found that "women face various and substantial burdens due to a significantly increased travel distance to the informed-consent appointments." *Planned Parenthood of Ind. & Ky., Inc.*, 273 F. Supp. 3d at 1037. She emphasized that "[n]ot only do these women have to pay for the additional travel expenses, but many have difficulty obtaining or paying for childcare, will lose up to an entire day's wages, and risk losing their employment altogether. They also have greater difficulty keeping their abortion confidential from abusive partners." *Id.* Judge Pratt held that "[g]iven the dearth of evidence that the State's interest is actually furthered by the new ultrasound law, the burdens it creates on women seeking to terminate their pregnancies—which are significant even if not overwhelming—dramatically outweigh the benefits, making the burdens undue and the new ultrasound law likely unconstitutional." *Id* at 1015-16.

The Seventh Circuit affirmed the preliminary injunction in *Planned Parenthood of Indiana & Kentucky, Inc.*, 896 F.3d 809 (7th Cir. 2018), but on July 2, 2020, the Supreme Court vacated the Seventh Circuit's decision and remanded to the Seventh Circuit for reconsideration in light of the Supreme Court's decision in *June Medical Services L.L.C. v. Russo*, 140 S. Ct. 2103 (2020). *See Box v. Planned Parenthood of Ind. & Ky., Inc.*, 141 S. Ct. 184 (2020). On remand, the parties stipulated on August 22, 2020, that "[t]he factual circumstances that have occurred in the more

than three years since the district court entered its preliminary injunction are significantly different and, in recognition of this, the parties . . . agree[] that the preliminary injunction should continue until January 1, 2021, at which point the injunction should be vacated and the case dismissed." Joint Circuit Rule 54 Statement ¶ 5, *Planned Parenthood of Ind. & Ky. v. Comm'r, Ind. State Dep't of Health*, No. 17-1883 (7th Cir. Filed Aug. 22, 2020), ECF No. 76-1.  On November 2, 2020, the district court "issued an order accepting the parties' stipulations [and] the case was subsequently closed on January 4, 2021."  Findings of Fact & Conclusions of Law ("Opinion" or "Op.") at 52 n.36, ECF No. 425; *see also Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. Dep't of Health*, 823 F. App'x. 440, 441 (7th Cir. 2020).

The eighteen-hour requirement was still enjoined in October 2020, when this Court denied Defendants' Motion for Summary Judgment in part.  *Whole Woman's Health All. v. Hill*, 493 F. Supp. 3d 694, 763 (S.D. Ind. 2020).  Considering the burden of the Ultrasound Requirement without the eighteen-hour delay, the Court granted Defendants' motion for summary judgment with respect to Plaintiffs' claim that the requirement violated the Substantive Due Process Clause of the Fourteenth Amendment.  Order Granting in Part & Den. in Part Def.'s Mot. Summ. J. 95, ECF No. 297.  Plaintiffs' Equal Protection challenge to the Ultrasound Requirement proceeded to trial.  Op. 10.

Following a bifurcated trial that commenced on March 15, 2021, this Court issued its findings of fact and conclusions of law on August 10, 2021.  The Court noted that the eighteen-hour ultrasound delay "is not directly challenged here," though it is currently in effect, and "[l]acking authority to address the constitutionality of the eighteen-hour requirement, we treat it as settled law."  Op. 52, 53 n.36.  As a result, the Court did not consider granting relief from this component of the law even though "the real thrust of Plaintiffs' evidence is that the Ultrasound

3

Requirement is unduly burdensome because it enforces a two trip minimum for abortion patients." Op. at 126 n.61 ("[W]e accede to the fact that the ultrasound must occur eighteen hours prior to an abortion and analyze the remaining aspects of the Ultrasound Requirement irrespective of its mandated delay."). Thus limited, the Court concluded that while "the Ultrasound Requirement may impose some burdens on women seeking abortion services that are not imposed on other pregnant patients, these burdens are not 'undue' given the legitimate and uncontested benefits from the law identified by the State." Op. 126.

In contrast, the Court held that the In-Person Counseling Requirement—which similarly requires two-trips to the provider's office, at least eighteen hours apart—is unduly burdensome and unconstitutional under the Substantive Due Process and Equal Protection Clauses of the Fourteenth Amendment. Op. 156. In that context, the Court found that burdens associated with the eighteen-hour delay include delays in patients being able to schedule their second appointment, "which may ultimately impact her eligibility to receive a medication abortion." Op. 131. Delays "force women to endure longer the often unwelcome physical symptoms associated with pregnancy longer and exacerbate anxieties of women struggling to access care or hoping to keep their pregnancies secret from others."[1] *Id.* "Requiring these women to complete a second trip to the clinic obviously increases and exacerbates these burdens, forcing women to take additional time off work (which, for some, threatens the loss of their jobs) and arrange and pay for extra child care." *Id.* The Court found that "[t]he burdens imposed by this *de facto* two-trip requirement are significant," ultimately holding that "these burdens [are] clearly excessive and [] they would be ameliorated by telemedicine delivered services." Op. 132.

---

[1] Additional travel-related burdens the Court credited include the fact that "women who do not live near clinics must choose between expending their resources either to travel on two separate days or to secure overnight lodging, which is simply unaffordable for some women." Op. 131.

## ARGUMENT

A court may grant a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) where "the court committed a manifest error of law or fact." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013) (citation omitted). Grant of a motion for reconsideration "is within the sound discretion of the district court." *Emley v. Wal-Mart Stores, Inc.*, No. 1:17-cv-02350-SEB-TAB, 2020 WL 509172, at *2 (S.D. Ind. Jan. 31, 2020).

Reconsideration is warranted here because the Court reasoned from the premise that it "[l]ack[ed] authority to address the constitutionality of the eighteen-hour requirement," Op. 53 n.36, when it was squarely within the Court's power to do so. The Court possesses authority to consider all aspects of the Ultrasound Requirement challenged by Plaintiffs, *see* Compl. ¶ 130(c)-(d), and to craft a remedy that is tailored to any constitutional deficiencies the Court finds. Taking the timing provision into account, the evidence presented at trial establishes that the Ultrasound Requirement imposes an undue burden on abortion access insofar as it must be satisfied at least eighteen hours in advance of an abortion.

## I. THE COURT HAS AUTHORITY TO ENJOIN ANY PORTION OF THE ULTRASOUND REQUIREMENT THAT IMPOSES AN UNCONSTITUTIONAL BURDEN

Federal courts may grant injunctive relief to remedy a constitutional violation in a manner not expressly requested by the parties. In *Citizens United v. FEC*, for example, the Supreme Court considered an as-applied challenge to the constitutionality of several statutes and found them facially unconstitutional, despite plaintiff's earlier stipulation to dismissal of its facial challenge. 558 U.S. 310, 329 (2010). The Court reasoned that the distinction between a facial and as-applied

challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Id.* at 331.

Just as a court may consider a facial remedy when addressing an as-applied claim, the reverse is also true. As the Supreme Court in *Ayotte v. Planned Parenthood of Northern New England* explained, in granting injunctive relief to remedy a constitutional violation, a court should "limit the solution to the problem" by, "for example … enjoin[ing] only the unconstitutional applications of a statute while leaving the other applications in force, or … sever[ing] its problematic portions while leaving the remainder intact." 546 U.S. 320, 328-29 (2006) (citation omitted). The Court emphasized that "the 'normal rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may [] be declared invalid to the extent that it reaches too far, but otherwise left intact.'" *Id.* at 329 (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)).

Here, the Ultrasound Requirement, Ind. Code § 16-34-2-1.1(a)(5), was challenged in the Complaint and is therefore properly before the Court. *See* Compl. ¶ 130(c)-(d). At summary judgment and trial, Plaintiffs requested that the Court find that the statute violates the undue burden standard and grant them facial relief from it. *See* Order Granting in Part & Den. In Part Def.'s Mot. Summ. J. 51, ECF No. 297; Phase I Tr. Vol. I, 14:13-17. Since the Court had authority to enjoin the statute in its entirety, the Court necessarily has authority to consider whether any particular aspect of the statute—including the timing provision—imposes an undue burden and narrowly tailor a remedy to address that aspect alone. *See Ayotte*, 546 U.S. at 328-29.

Although the timing provision was enjoined for much of this litigation and Plaintiffs framed the Complaint as addressing the statute in its absence, it is an integral part of the burden currently imposed by the challenged statute. *Cf.* Op. 126 n.61 ("We note here that the real thrust

of Plaintiffs' evidence is that the Ultrasound Requirement is unduly burdensome because it enforces a two-trip minimum for abortion patients."). The footnote in the Complaint noting that the timing provision was "not challenged here," Compl. ¶ 130(d) n.46, has no more power to tie the Court's hands with respect to the scope of relief it can grant than the stipulation by the plaintiffs in *Citizens United* purporting to dismiss their claims for facial relief. *See Citizens United*, 558 U.S. at 329. Thus, the Court had authority not only to consider the impact of the timing provision on abortion access, but to enjoin that provision alone if doing so would remedy a constitutional violation.

## II. THE ULTRASOUND REQUIREMENT IS UNCONSTITUTIONAL TO THE EXTENT IT IMPOSES A TWO-TRIP REQUIREMENT ON CERTAIN ABORTION PATIENTS.

The Ultrasound Requirement in practice imposes many of the same travel burdens on patients as the In-Person Counseling Requirement—a patient must travel to a clinic for an ultrasound and then make a second visit for the abortion, rather than having the ultrasound and abortion completed in a single visit. This extra trip requires abortion patients to take extra time off work, pay for child care, and endure unwanted physical symptoms longer. *See* Op. 131-32.

As this Court acknowledged in its post-trial Opinion in the context of addressing the In-Person Counseling Requirement,

> [t]he Supreme Court and Seventh Circuit have both recognized that the burdens associated with travel, including the costs associated therewith and the impact on delays in accessing care, operate to create substantial burdens to access where, as here, the evidence establishes that the restrictive statute does little to actually promote the benefits asserted by the State."

Op. 132 (citing *Whole Woman's Health Alliance v. Hellerstedt*, 136 S. Ct. 2292, 2313, 2318 (2016); *Whole Woman's Health All. v. Hill*, 937 F.3d 864, 896, 877-78 (7th Cir. 2019); *Planned Parenthood of Wis., Inc. v. Schimel*, 806 F.3d 908, 915-16, 919-21 (7th Cir. 2015)). Moreover,

7

this Court "stress[ed] that these delays and this travel are significant burdens for a large fraction of women seeking services in Indiana." Op. 132. Further, "[i]f the impacts of the law amount to a substantial obstacle to the abortion decision for a 'large fraction' of this group, the burdens imposed are undue." Op. 92 (citing *Whole Woman's Health All. v. Hellerstedt*, 136 S. Ct. 2292, 2313 (2016); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992)).

The Ultrasound Requirement's timing provision imposes particular burdens on the patients of stand-alone abortion clinics, such as Whole Women's Health Alliance and Women's Med.[2] These clinics are unable to open satellite locations that would provide information sessions and ultrasounds to pregnant women because "it's not economically feasible to do so." Phase I Tr. Vol. I, 203:18 (Dr. Haskell testifying regarding Women's Med Indianapolis). As a result, patients need to travel to the location where they are receiving abortion care twice.

Even if a mandated ultrasound is not unduly burdensome per se, the timing provision is, particularly as-applied to patients of stand-alone abortion clinics. The Court has authority to consider and remedy these burdens, and reconsideration of the Ultrasound Requirement's constitutionality is therefore warranted.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court enter an order amending the judgment to find that the Ultrasound Requirement imposes an undue burden on abortion access insofar as the required ultrasound must be performed eighteen hours in advance of the abortion and permanently enjoining enforcement of the timing provision.

---

[2] Even patients of Planned Parenthood, who could visit affiliated clinics closer to home, still suffer from scheduling delays because of the low availability of ultrasounds. *See* Phase I Tr. Vol. I, 33-34 (Laura Miller testimony).

8

Dated: September 3, 2021

Respectfully submitted,

*/s/ Rupali Sharma*
Rupali Sharma
rsharma@lawyeringproject.org
LAWYERING PROJECT
113 Bonnybriar Rd.
South Portland, ME 04106
(908) 930-6645

Amanda Allen*
aallen@lawyeringproject.org
Juanluis Rodriguez*
prodriguez@lawyeringproject.org
Sneha Shah*
sshah@lawyeringproject.org
Stephanie Toti
stoti@lawyeringproject.org
LAWYERING PROJECT
41 Schermerhorn St., No. 1056
Brooklyn, NY 11201
(646) 490-1083

Melissa Shube*
mshube@lawyeringproject.org
LAWYERING PROJECT
712 H St. NE, Suite 1616
Washington, D.C. 20002
(646) 480-8942

Kathrine D. Jack
kjack@jacklawoffice.com
JACK LAW OFFICE LLC
One Courthouse Plaza
P.O. Box 813
Greenfield, IN 46140
(317) 477-2300

Amy Van Gelder*
amy.vangelder@probonolaw.com
155 N. Wacker Dr., Ste. 2700
Chicago, IL 60606
(313) 407-0903

Lara A. Flath*
lara.flath@probonolaw.com
Mollie M. Kornreich*
mollie.kornreich@probonolaw.com
Thania Charmani*
thania.charmani@probonolaw.com
Michael M. Powell*
michael.powell@probonolaw.com
One Manhattan West
New York, New York 10001
(212) 735-3000

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

I hereby certify that, on September 3, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the Court's Electronic Court Filing ("ECF") system.

Dated: September 3, 2021

*/s/ Rupali Sharma*
Rupali Sharma
